**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KIMBERLY BENSON; KARIMDAD
BALOCH; and NEERJA JAIN
GURSAHANEY, individually and on
behalf of all others similarly
situated,

    *Plaintiffs-Appellants,*

        v.

JPMORGAN CHASE BANK, N.A.,
individually and as successor in
interest of Washington Mutual,
Inc.,

    *Defendant-Appellee.*

No. 10-17402

D.C. No.
3:09-cv-05272-MEJ

JOHN ALEXANDER LOWELL,
individually and on behalf of all
others similarly situated,

    *Plaintiff-Appellant,*

        v.

JPMORGAN CHASE BANK, N.A.,
individually and as successor in
interest of Washington Mutual,
Inc.,

    *Defendant-Appellee.*

No. 10-17404

D.C. No.
3:09-cv-05560-MEJ

OPINION

3237

Appeal from the United States District Court
For the Northern District of California
Maria-Elena James, Chief Magistrate Judge, Presiding

Argued and Submitted
December 6, 2011—San Francisco, California

Filed March 20, 2012

Before: Carlos F. Lucero,* Consuelo M. Callahan, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Lucero

---

*The Honorable Carlos F. Lucero, United States Circuit Judge for the
Tenth Circuit, sitting by designation.

## COUNSEL

Niall P. McCarthy, Cotchett, Pitre & McCarthy, LLP, Burlingame, California (Anne Marie Murphy and Aron K. Liang, Cotchett, Pitre & McCarthy, LLP, Burlingame, California, and Derek G. Howard and Bethany Caracuzzo, Minami Tamaki LLP, San Francisco, California, with him on the briefs), for the plaintiffs-appellants.

Robert A. Sacks (Stacey R. Friedman and M. David Possick with him on the briefs), Sullivan & Cromwell LLP, Los Angeles, California, for the defendant-appellee.

## OPINION

LUCERO, Circuit Judge:

Plaintiffs, a group of investors defrauded by the "Millennium Ponzi scheme," seek recourse against JPMorgan Chase Bank N.A. ("JPMorgan"). They allege that Washington Mutual, Inc. ("WaMu") aided and abetted the Ponzi scheme by providing banking services to several companies controlled by the scheme's principals despite actual knowledge of the fraud. JPMorgan, they argue, is liable as successor in interest of WaMu, having purchased most of WaMu's assets and liabilities from the Federal Deposit Insurance Corporation ("FDIC"). The FDIC had taken WaMu into receivership pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA"). Plaintiffs further claim JPMorgan is liable because it continued WaMu's problematic practices following assumption.

The district court dismissed plaintiffs' complaints for failure to exhaust FIRREA's administrative remedies. *See* 12 U.S.C. § 1821(d)(13)(D)(ii) (barring "any claim relating to

any act or omission of [a failed bank] or the [FDIC] as receiver" unless such claim is first presented to the FDIC). Plaintiffs contend, however, that FIRREA's jurisdictional bar is limited to claims against a failed bank or the FDIC and thus has no application to claims asserted against a purchasing bank with assets that passed through FDIC receivership. They further argue that portions of their claims are based on JPMorgan's independent, post-purchase conduct, which is not governed by FIRREA.

We reject plaintiffs' first contention. Litigants cannot avoid FIRREA's administrative requirements through strategic pleading. Accordingly, we join three other circuits in concluding that a claim asserted against a purchasing bank based on the conduct of a failed bank must be exhausted under FIRREA. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1144 (D.C. Cir. 2011); *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008); *Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 n.3 (11th Cir. 1999).

The same is not true, however, with respect to claims based on a purchasing bank's post-purchase actions. Such claims are not governed by FIRREA. They could not, and accordingly need not, be exhausted before the FDIC. *See Henderson v. Bank of New England*, 986 F.2d 319, 321 (9th Cir. 1993) (FIRREA applies only to claims that are "susceptible of resolution through the claims procedure").

Although we agree with plaintiffs' legal argument on this score, we conclude it has no application to the case at bar. Plaintiffs did not adequately plead a claim based on JPMorgan's independent conduct; they relied instead solely on conclusory allegations. The district court's dismissal of plaintiffs' claims, along with its subsequent denial of plaintiffs' Federal Rule of Civil Procedure 60(b) motion, was therefore proper. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

# I

# A

We draw the following facts from plaintiffs' complaints.[1] In 1999, Canadian attorney William J. Wise initiated the Millennium Ponzi scheme. Wise formed the Millennium Bank and Trust Company, later renamed the Millennium Bank, in St. Vincent and the Grenadines. He began selling what he claimed were high-yield Certificates of Deposit ("CDs") issued by subsidiaries of the United Trust of Switzerland S.A. In fact, the CDs sold by Wise and his associates were fraudulent, the Millennium Bank was not affiliated with any Swiss banking company, and the company was not licensed to sell securities. The Millennium Bank originally obtained financial services from several banks in North Carolina, but those institutions closed Wise's accounts due to suspicious activity.

In July 2004, Wise and two of his associates, Jacqueline and Kristi Hoegel, formed three Nevada business entities with names similar to United Trust of Switzerland: UT of S, LLC; United T of S, LLC; and Sterling I.S., LLC (collectively, the "Nevada LLCs"). The Hoegels used these entities to operate the banking side of the scheme from Napa, California. They would regularly deposit large checks in bulk at the Napa WaMu branch and immediately wire large sums to "known banking and tax havens." Most checks that the Hoegels deposited had handwritten notations that indicated they were tendered in exchange for CDs. However, based on paperwork submitted at the time the accounts for the Nevada LLCs were opened, WaMu was aware that the companies were not licensed to sell securities in the United States.

Two WaMu employees provided substantial assistance to

---

[1]"In reviewing [a] Rule 12(b)(1) dismissal, we must accept all factual allegations in the complaint as true." *Carson Harbor Village, Ltd. v. City of Carson*, 353 F.3d 824, 826 (9th Cir. 2004).

the Hoegels: branch manager Tamara Miller and commercial banking officer Bianca Greeves. Greeves recommended in February 2008 that the Nevada LLCs install a "cash management transfer" ("CMT") system at the Nevada LLCs' office. CMT systems, which allow outgoing wire transfers to be sent without the direct assistance of bank staff, are usually provided to large institutions with multinational operations. Before providing the CMT system, WaMu was required to conduct a detailed audit. Jennifer Blevins, a Business Treasury Services Senior Specialist for WaMu, approved the use of a CMT system for the Nevada LLCs after investigating the nature of their business, their financial strength, the number of their employees, and the amount of money coming in and out of their accounts each month. In September 2008, Greeves further recommended that the Nevada LLCs obtain a "remote deposit capture" ("RDC") system, which allows companies to scan and deposit checks without presenting them to a bank. Installing this system required a second and more detailed audit, which was again conducted by Blevins.

On September 22, 2008, the Federal Deposit Insurance Company ("FDIC") seized WaMu pursuant to its authority under FIRREA. Three days later, JPMorgan acquired most of WaMu's assets and liabilities under a purchase and assumption agreement with the FDIC.

The Millennium Ponzi scheme came to an end several months later. On March 25, 2009, the Securities and Exchange Commission filed an action against Wise. It alleged that Wise, the Hoegels, and their associates had raised at least $68 million by selling fraudulent CDs. A receiver took control of the Nevada LLCs' assets and those of the Millennium Ponzi scheme principals. All suits against those individuals and entities were enjoined.

**B**

In November 2009, two similar complaints involving the Millennium Ponzi scheme were filed against JPMorgan. The

first was filed by Kimberly Benson, Karimdad Baloch, and Neerja Gursahaney, and the second by John Lowell. The first set of plaintiffs purchased what they believed were CDs from the Nevada LLCs between May 2006 and August 2008. Lowell did not state when he purchased fraudulent CDs. Both complaints asserted claims for aiding and abetting fraud, aiding and abetting conversion, and violating California banking law. The complaint by Benson, Baloch, and Gursahaney also asserted claims for aiding and abetting breach of fiduciary duty, and conspiracy to commit fraud and conversion. Both complaints sought certification of a class of similarly situated victims of the Millennium Ponzi scheme. The two cases were consolidated below.

The district court dismissed the conspiracy claims on JPMorgan's Federal Rule of Civil Procedure 12(b)(6) motion, but denied that motion as to plaintiffs' remaining claims. JPMorgan then filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that the district court lacked jurisdiction because plaintiffs had not exhausted administrative remedies under FIRREA. The district court granted that motion and ordered the clerk of the court to "close the file" for the case. No separate judgment was entered.

Plaintiffs then filed a Rule 60(b) motion seeking reconsideration of the district court's order and an opportunity to amend their complaints. They argued that even if their claims based on WaMu's conduct could be dismissed, the complaints alleged independent misconduct on the part of JPMorgan. Although the complaints do not detail any specific actions taken by JPMorgan, an introductory paragraph states that despite actual knowledge of the Millennium Ponzi scheme, "[WaMu] continued to provide substantial assistance to Wise's illegal enterprise and promoted the continued success of that enterprise for a period in excess of four years" and that "[t]hese practices continued after JPMorgan acquired [WaMu]

in September of 2008." The district court denied reconsideration.

## II

We review de novo a district court's dismissal under Rule 12(b)(1). *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1156 (9th Cir. 2007). "For the purposes of reviewing such dismissals, and where, as here, no evidentiary hearing has been held, all facts alleged in the complaint are presumed to be true." *Id.* (quotation and alterations omitted).

A district court's denial of a Rule 60(b) motion is reviewed for abuse of discretion. *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1100 (9th Cir. 2006). "Whether such a denial rests on an inaccurate view of the law and is therefore an abuse of discretion requires us to review the underlying legal determination de novo." *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1100 (9th Cir. 2004) (citation and italicization omitted).

## III

**[1]** Following the savings and loan crisis of the 1980s, Congress passed FIRREA " 'to give the FDIC power to take all actions necessary to resolve the problems posed by a financial institution in default.' " *Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir. 1996) (quoting H.R. Rep. No. 101-54(I), at 330 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 126). The statute grants the FDIC authority to "act as receiver or conservator of a failed institution for the protection of depositors and creditors." *Sharpe v. FDIC*, 126 F.3d 1147, 1154 (9th Cir. 1997). It provides detailed procedures to allow the FDIC to consider certain claims against the receivership estate, *see* 12 U.S.C. § 1821(d)(3)-(10), "to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of failed banks,"

*McCarthy v. FDIC*, 348 F.3d 1075, 1079 (9th Cir. 2003) (quotation omitted).

**[2]** FIRREA requires that a plaintiff exhaust these administrative remedies with the FDIC before filing certain claims. *Henderson v. Bank of New England*, 986 F.2d 319, 321 (9th Cir. 1993). The statute provides:

> Limitation on judicial review. Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

§ 1821(d)(13)(D).

The district court dismissed plaintiffs' claims under § 1821(d)(13)(D)(ii), holding that the claims related to acts or omissions of WaMu and had not been presented to the FDIC. Plaintiffs argue the district court erred in construing FIRREA to preclude their claim against JPMorgan as WaMu's successor in interest. They argue the jurisdictional bar does not apply to claims asserted against third-party purchasing banks such as JPMorgan. In the alternative, plaintiffs contend that portions of their claims were based on JPMorgan's own, post-purchase misconduct and were thus not related to the acts or omissions of WaMu. Finally, they argue that the district court improperly dismissed their complaint without allowing them leave to amend.

## A

**[3]** Plaintiffs' assertion that FIRREA's jurisdictional bar does not apply to purchasing institutions is undermined by the plain text of § 1821(d)(13)(D)(ii). That provision distinguishes claims on their factual bases rather than on the identity of the defendant: It asks whether claims "relate to any act of omission" of a failed institution or the FDIC. Notably, the provision does not make any distinction based on the identity of the party from whom relief is sought.

In their uphill argument against the statutory text, plaintiffs rely heavily on *Henrichs v. Valley View Development*, 474 F.3d 609 (9th Cir. 2007), in which this court stated that FIR-REA's "requirement to exhaust administrative remedies applies only in an action against the FDIC as receiver." *Id.* at 614. In context, however, it is clear that *Henrichs* discussed only the first prong of FIRREA's jurisdictional bar contained in § 1821(d)(13)(D)(i).

The *Henrichs* case concerned a collateral attack on a state-court judgment quieting title in a parcel of land that had passed through FDIC receivership. A plaintiff argued that FIRREA vests exclusive federal jurisdiction over any dispute regarding property once held by the FDIC as a receiver. *See Henrichs*, 474 F.3d at 613. The *Henrichs* plaintiff cited to 12 U.S.C. § 1821(j), which bars any court from "restrain[ing] or affect[ing] the exercise of powers or functions of the [FDIC] as a conservator or a receiver," and to § 1821(d)(13)(D). We rejected reliance on § 1821(j), holding that a state-court quiet title action brought by the purchasers of property once held in receivership did not restrain or affect the FDIC, which had relinquished any interest in the parcel at the time of suit. *Henrichs*, 474 F.3d at 614.

As to § 1821(d)(13)(D), we expressed some confusion as to the nature of the plaintiff's argument. "If, by citing this provision, [the plaintiff] means to imply that the statute bars the

state court's adjudication of the dispute with [the property owner], he is mistaken." *Henrichs*, 474 F.3d at 614. We concluded that § 1821(d)(13)(D) does not "confer exclusive federal jurisdiction." *Henrichs*, 474 F.3d at 614. The court further stated that "the requirement to exhaust administrative remedies applies only in an action against the FDIC as receiver." *Id.*

Although the court cited § 1821(d)(13)(D) without specifying a subsection, context establishes that the above-quoted statement concerned only subsection (i), which requires exhaustion of administrative remedies for "any action seeking a determination of rights with respect to[ ] the assets of any depository institution for which the [FDIC] has been appointed receiver." The court described only the first prong of § 1821(d)(13)(D), which "states that individuals seeking to make claims that affect assets acquired by the FDIC in its capacity as a conservator or receiver must exhaust the FDIC's administrative claims process before seeking judicial review." *Henrichs*, 474 F.3d at 614. The quiet title action at issue in *Henrichs* arguably qualified under this prong as one "seeking the determination of rights" as to an asset formerly held by the FDIC as receiver for a failed bank. In contrast, nothing in *Henrichs* suggests that the quiet title action could have been related to the acts or omissions of a failed bank or the FDIC —the subjects of subsection (ii).[2]

Because *Henrichs* did not consider subsection (ii), the provision at issue in this case, it does not control our analysis.[3]

---

[2]Plaintiff in *Henrichs* also advanced a breach of contract claim against the FDIC, but that claim was dismissed as moot. 474 F.3d at 615. The court did not discuss FIRREA's application to the contract claim, and the court did not note any "act or omission" of the failed bank, *see* § 1821(d)(13)(D)(ii), in relation to the attack on the quiet title judgment.

[3]The same is true of an out-of-circuit case plaintiffs cite along with *Henrichs*. In *FDIC v. McFarland*, 243 F.3d 876 (5th Cir. 2001), the court held that the "claim procedures articulated in [FIRREA] are predicated on

We are similarly unpersuaded by plaintiffs' citation to other Ninth Circuit authority. Plaintiffs focus on a statement in *McCarthy* indicating that FIRREA's jurisdictional bar applies to claimants "who challenge conduct by the FDIC as receiver." 348 F.3d at 1081. But the *McCarthy* court did not hold that *only* such claims are covered. To the contrary, *McCarthy* recognized that "FIRREA's exhaustion requirement applies to *any* claim or action respecting the assets of a failed institution for which the FDIC is receiver." *Id.* Furthermore, *McCarthy* plainly did not deal with the statutory subsection at issue here: the jurisdictional bar on claims "relating to any act or omission" of a failed bank. § 1821(d)(13)(D)(ii).

By the same token, *Henderson*, 986 F.2d 319, does not excuse exhaustion in this case. We explained in *Henderson* that FIRREA "bars judicial review of any non-exhausted claim, monetary or nonmonetary, which is susceptible of resolution through the claims procedure." *Id.* at 321 (quotation omitted). Although plaintiffs assert that their claims are not currently susceptible to the claims process, plaintiffs give us no reason to believe that FIRREA exhaustion would have been futile had they submitted them within the appropriate time frame. Further, to the extent plaintiffs assert they currently lack a remedy, that result can only be attributed to their failure to exhaust. *Cf. Bueford v. Resolution Trust Corp.*, 991

---

the FDIC's possession of the property in question. When the FDIC relinquishes ownership, the procedures governing its role as a receiver no longer apply to the property." *Id.* at 887 n.42. But *McFarland* did not consider whether § 1821(d)(13)(D)(ii) extends to claims against parties other than a failed bank or the FDIC. The court briefly discussed § 1821(d)(13)(D), which was raised for the first time during oral argument, in rejecting a contention that FIRREA barred adjudication of a lien seniority dispute involving an assignee of the FDIC. *McFarland*, 243 F.3d at 887 n.42. As in *Henrichs*, the *McFarland* court did not distinguish between the subsections of FIRREA's jurisdictional bar, but it is clear the court was referring to subsection (i). The case concerned assets once held by the FDIC but did not discuss any allegations of wrongdoing by the failed bank or the FDIC. *Id.*

F.2d 481, 486 (8th Cir. 1993) ("Since the language of the statute expressly provides for judicial review after exhaustion of the administrative procedures, [plaintiff] cannot prevail on her claim that FIRREA's administrative procedures deny her due process by making judicial review unavailable.").

**[4]** Thus, this court has not decided the precise issue pressed by plaintiffs in their first claim of error: whether FIRREA's jurisdictional bar can apply to claims against parties other than failed banks or the FDIC. Some of our sibling circuits, however, have addressed the question.

In *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373 (6th Cir. 2008), the court considered an argument that FIRREA did not apply because plaintiffs "sued only [the bank that purchased a failed institution], rather than the FDIC" and thus the "claims fall completely outside of the framework of FIRREA's administrative process." *Id.* at 386. The court flatly rejected this line of reasoning:

> The problem with this novel argument is that all of [plaintiffs'] claims against [the purchasing bank] are directly related to acts or omissions of the FDIC as the receiver of [the failed bank]. As the district court explained, accepting the [plaintiffs'] argument and permitting claimants to avoid the provisions of (d)(6) and (d)(13) by bringing claims against the assuming bank would encourage the very litigation that FIRREA aimed to avoid.

*Id.* (quotation and alterations omitted).

Although its reasoning differs slightly from the Sixth Circuit, the D.C. Circuit also signaled that it would require exhaustion for claims against third-party purchasing banks in some cases. The D.C. Circuit held that "[i]n FIRREA, the word 'claim' is a term-of-art that refers only to claims that are resolvable through the FIRREA administrative process, and

the only claims that are resolvable through the administrative process are claims against a depository institution for which the FDIC is receiver." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1142 (D.C. Cir. 2011).

However, attempting to harmonize its position with that of the Sixth Circuit, the court recognized that "plaintiffs cannot circumvent FIRREA's jurisdictional bar by drafting their complaint strategically. Where a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver, it is a 'claim' within the meaning of FIRREA's administrative claims process." *Id.* at 1144. Looking to the facts of *Village of Oakwood*, the D.C. Circuit noted that plaintiffs' complaint in that case "alleged that the FDIC, not the assuming bank, had breached its fiduciary duty." *Am. Nat'l Ins. Co.*, 642 F.3d at 1144. On this basis, the court reasoned, "the *Village of Oakwood* plaintiffs' suit was functionally a claim against the FDIC-as-receiver. . . [and] the court of appeals correctly held the action jurisdictionally barred." *Id.* (citations omitted). The Eleventh Circuit has also concluded that FIRREA requires exhaustion for some claims against purchasing banks, although it did not rely on the text of § 1821(d)(13)(D) for its conclusion. *See Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 n.3 (11th Cir. 1999).

**[5]** We agree with these circuits that FIRREA's jurisdictional bar applies to claims asserted against a purchasing bank when the claim is based on the conduct of the failed institution.[4] And although we recognize the D.C. Circuit's holding in

---

[4]We are not persuaded by the cases that plaintiffs contend stand for the proposition that FIRREA's jurisdictional bar applies only to claims against a failed bank, *Freeman v. FDIC*, 56 F.3d 1394 (D.C. Cir. 1995), and *Ambase Corp. v. United States*, 61 Fed. Cl. 794 (2004). Although dicta from those cases state that the bar applies to claims against a failed bank, they simply do not address the question of whether FIRREA might apply to a suit against a purchasing bank. *See Village of Oakwood*, 539 F.3d at 386-87 (holding that *Ambase* is inapposite).

*American National Insurance* has a different formulation than the approach in *Village of Oakwood*, we have no need to resolve any potential tension between the two in this case. The bulk of plaintiffs' claims plainly qualify as "*functionally*, albeit not *formally*" against a failed bank. *Am. Nat'l Ins. Co.*, 642 F.3d at 1144.

**[6]** Plaintiffs' complaints are based almost exclusively on alleged malfeasance by WaMu. They claim that WaMu knowingly provided banking services—including allowing the Nevada LLCs to utilize CMT and RDC systems—despite its actual knowledge of the Millennium Ponzi scheme. They argue that JPMorgan is liable for this conduct because it assumed WaMu's liabilities pursuant to a purchase and assumption agreement with the FDIC. By relying on WaMu's alleged wrongdoing, plaintiffs' claims plainly "relat[e] to any act or omission" of "a depository institution for which the [FDIC] has been appointed receiver." § 1821(d)(13)(D). And because plaintiffs did not exhaust administrative remedies, their claims are jurisdictionally barred by FIRREA.

**B**

Plaintiffs also contend that the district court erred by dismissing the portions of their claims based on JPMorgan's independent activity. In denying plaintiffs' Rule 60(b) motion, the district court held that "although Plaintiffs alleged that practices continued after [JPMorgan] acquired WaMu in September 2008, this assertion fell short of transforming Plaintiffs' claims into something other than claims 'relating' to WaMu's alleged misconduct." Moreover, the court held that even if the complaints "include stand-alone allegations of post-receivership misconduct by [JPMorgan], FIRREA still applies" because the phrase "relating to" as used in § 1821(d)(13)(D)(ii) "has a deliberately broad and sweeping meaning."

**[7]** We disagree with the district court's analysis. Claims of independent misconduct by an institution that purchases a

failed bank are not covered by FIRREA's exhaustion require-ment. We need look no further than the plain language of the statute to reach this conclusion. As relevant to this matter, FIRREA requires exhaustion of claims "relating to any act or omission of [a failed bank] or the [FDIC] as receiver." § 1821(d)(13)(D)(ii). If a plaintiff alleges that a purchasing bank aided and abetted a fraudulent scheme following its assumption of a failed bank, that claim simply does not relate to any act or omission of the failed bank or the FDIC.

The district court relied on *Morales v. Trans World Air-lines, Inc.*, 504 U.S. 374 (1992), in support of its expansive interpretation of the phrase "relating to." *See id.* at 383 ("The ordinary meaning of these words ['relating to'] is a broad one — 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with . . . .' " (quoting *Black's Law Dictionary* 1158 (5th ed. 1979))). Because plaintiffs allege that JPMorgan continued the tortious conduct that WaMu began, the district court ruled that plaintiffs' claims relate to the conduct of WaMu.

**[8]** This analysis misinterprets the operative language. Although we do not quibble with the district court's conclu-sion that the phrase "relating to" has a broad meaning, we nevertheless hold that a claim alleging liability based only on post-purchase misconduct of a purchasing bank would not "relate to" acts or omissions of a failed bank for purposes of FIRREA. The fact that JPMorgan acted in a manner that was similar, or even identical, to the manner in which WaMu acted does not alter our conclusion. The *acts* of the purchas-ing bank might be related to the *acts* of the failed bank, but FIRREA's jurisdictional bar applies when a *claim* relates to the *acts* of a failed bank. § 1821(d)(13)(D)(ii). Purchase of a failed bank does not buy an institution immunity to continue in its predecessor's malfeasance.

The D.C. Circuit's decision in *American National Insur-ance* supports our conclusion. In that case, the court rejected

an argument that FIRREA barred a claim against JPMorgan for allegedly engaging in an "elaborate scheme designed to improperly and illegally take advantage of the financial difficulties of [WaMu] and strip away valuable assets of [WaMu] without properly compensating the company or its stakeholders." 642 F.3d at 1139 (quotation omitted). Such allegations do not fall within FIRREA's jurisdictional bar, the court held, because "appellants allege that [JPMorgan], not the FDIC-as-receiver or [WaMu], itself committed the tortious acts for which they claim relief." *Id.* at 1144.

**[9]** Although we reject plaintiffs' assertion that their claims based on WaMu's conduct were not "susceptible of resolution through the claims procedure," *see Henderson*, 986 F.2d at 321, we agree that a claim based on JPMorgan's own acts could not be resolved by the FDIC and thus is not barred by § 1821(d)(13)(D). As the D.C. Circuit explained, if "neither the failed depository institution nor the FDIC-as-receiver bears any legal responsibility for claimant's injuries, the claims process offers only a pointless bureaucratic exercise." *Am. Nat'l Ins. Co.*, 642 F.3d at 1143.

JPMorgan seeks to distinguish *American National Insurance* on the ground that plaintiffs in this case advanced claims with allegations of misconduct by both WaMu and JPMorgan. But a plaintiff 's decision to include allegations about both the failed bank and the purchasing bank in a single complaint does not require a court to treat those allegations in the same manner. We frequently dismiss those portions of a claim that are barred while permitting the remaining portion of a claim to go forward. *See, e.g.*, *Guerrero v. Gates*, 442 F.3d 697, 708 (9th Cir. 2006) ("We affirm the district court's grant of the defendants' motions to dismiss . . . as to all but one half of one of Guerrero's § 1983 claims. We reverse as to that part of Guerrero's claim for excessive force resting on the 1997 incident."). An adequately pled claim based on JPMorgan's own misconduct cannot fail merely because it is coupled with a barred claim against WaMu.

Although we hold that a plaintiff may sue based on a purchasing bank's own wrongdoing without attempting to exhaust FIRREA administrative remedies, we must still determine whether plaintiffs' complaints adequately state such claims. Each of plaintiffs' specific allegations concern pre-purchase misconduct by WaMu. The complaints do allege, however, that the Millennium Ponzi scheme continued until March 2009, several months after JPMorgan purchased WaMu. In an introductory paragraph, plaintiffs allege that WaMu knowingly aided and abetted the Ponzi scheme and that "[t]hese practices continued after JPMorgan acquired [WaMu] in September of 2008." They further allege that JPMorgan is liable "[f]or its own conduct and as [WaMu's] successor in interest."

**[10]** We conclude that plaintiffs' conclusory allegations regarding JPMorgan fall short of stating a claim for relief that is free from FIRREA's exhaustion requirements. The sole allegation regarding JPMorgan is that unidentified "practices continued" after acquisition; plaintiffs fail to allege a single specific act taken by the purchasing bank. Further, we note that each of the named plaintiffs who allege specific dates of their CD purchases transferred funds to the Millennium Ponzi scheme principals prior to WaMu's failure. Without any allegations explaining how the amorphous "practices" of JPMorgan might relate to named plaintiffs' injuries—which had already occurred by the time WaMu failed—we cannot discern a properly pled claim based on the purchasing bank's misconduct. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (we need not "accept as true allegations that are merely conclusory"); *see also Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 975 (9th Cir. 2007) (applying rule in reviewing dismissal for failure to exhaust administrative remedies).

Plaintiffs contend that the district court previously ruled that their allegations stated valid claims by denying, in part, JPMorgan's Rule 12(b)(6) motion. But that order, issued

before any briefing on the impact of FIRREA, did not differentiate between pre- and post-purchase acts. As such, our conclusion that plaintiffs have not adequately pled a complaint based on JPMorgan's actions is not in tension with that ruling.

[11] Although we hold that a claim—or a portion of a claim—based on JPMorgan's independent, post-purchase conduct would not be subject to FIRREA's jurisdictional bar, we conclude that plaintiffs' complaints do not include such a claim. Accordingly, the district court's order dismissing the complaints was proper despite our disagreement with its reasoning.

## C

In addition to the substantive errors the plaintiffs argued in their Rule 60(b) motion, they claimed that the district court erred by dismissing the case without granting them leave to amend their complaints. In denying that motion, the district court stated that because final judgment had already been entered, a motion for leave to amend may only be considered "if the judgment is first reopened under a motion brought under Rule 59 or 60." *Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996).

We question whether the rule of *Lindauer* applies here. A separate judgment was not actually entered below.[5] JPMorgan claims that the district court's order granting its Rule 12(b)(1) motion was a "judgment" and thus *Lindauer* applies. JPMorgan's theory appears inconsistent with this court's jurispru-

---

[5]The fact that a separate judgment was never entered does not affect our appellate jurisdiction because the district court's dispositive order constituted "a full adjudication of the issues" and clearly demonstrated "the judge's intention that it be the court's final act in the matter." *Casey v. Albertson's, Inc.*, 362 F.3d 1254, 1258 (9th Cir. 2004) (quotation omitted). "[N]either the Supreme Court nor this court views satisfaction of Rule 58 as a prerequisite to appeal." *Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1140 (9th Cir. 2003).

dence regarding plaintiffs' ability to amend as of right following an order dismissing all claims. *See Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 789 (9th Cir. 1963) ("Neither the filing nor granting of such a motion [to dismiss] before answer terminates the right to amend; an order of dismissal denying leave to amend at that stage is improper, and a motion for leave to amend (though unnecessary) must be granted if filed."); *see also Worldwide Church of God, Inc. v. California*, 623 F.2d 613, 616 (9th Cir. 1980) (per curiam) (judgment, rather than order of dismissal, cuts off right to amend prior to responsive pleading).

**[12]** Nevertheless, plaintiffs conceded at oral argument that a judgment had been entered by the time plaintiffs filed their Rule 60(b) motion. In light of this concession, we will assume without holding that *Lindauer* applies. Because we conclude that the district court's dismissal was proper, there was no basis to reopen the judgment under Rule 60(b). Accordingly, *Lindauer* barred post-judgment amendment. To the extent that plaintiffs argue that the district court's dismissal without leave to amend was itself the mistake justifying reopening the case, we reject their argument because they did not seek leave to amend before filing the Rule 60(b) motion—at which point, they concede, judgment had been entered. Plaintiffs cannot prevail on an argument that the district court should have sua sponte granted a motion they never filed. *See Alaska v. United States*, 201 F.3d 1154, 1163 (9th Cir. 2000) ("Where a party never asked for permission, its argument that the 'district court should have permitted' is without force."). Accordingly, the district court's denial of plaintiffs' Rule 60(b) motion was proper.

**IV**

For the foregoing reasons, we **AFFIRM**.