**Billian JO, as Personal Representative of the Estate of Mee Jin–Jo, Plaintiff,**

v.

**JPMC SPECIALTY MORTGAGE, LLC, Defendant.**

### 1:08–CV–00230 EAW

United States District Court, W.D. New York.

Signed 03/31/2017

Billian Jo, pro se

Robert J. Kalb, Forsyth, Howe, O'Dwyer, Kalb & Murphy, P.C., Rochester, NY, Kenneth J. Flickinger, Eckert Seamans Cherin & Mellott, LLC, White Plains, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

## INTRODUCTION

*Pro se* Plaintiff Mee Jin–Jo ("Plaintiff"), now deceased and represented in this action by her personal representative Billian Jo,[1] commenced this lawsuit on March 18, 2008, alleging that JPMC Specialty Mortgage, LLC ("Defendant" or "JPMC"), as successor in interest to Washington Mutual, Inc. ("WaMu"), improperly retained control over her property after she was evicted as a no-fault tenant from her residence. (Dkt. 1). Plaintiff's claims of violation of New York's Truth–in–Storage Act,

---

1. On October 2, 2013, representatives of Plaintiff Mee Jin–Jo filed a notice of her death. (Dkt. 252). On December 19, 2014, Sughe Jo was permitted to proceed on behalf of Plaintiff Mee Jin–Jo's estate. (Dkt. 270). On June 15, 2015, the Court granted Plaintiff's motion to substitute Billian Jo as the personal representative of the estate of Plaintiff Mee Jin–Jo. (Dkt. 287).

conversion, and intentional torts remain pending. (*See* Dkt. 293 at 1–2; Dkt. 297 at 2).

Presently before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Dkt. 303). Defendant contends that Plaintiff failed to exhaust the administrative remedies required by the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), and as a result, the Court lacks jurisdiction over Plaintiff's claims. (Dkt. 303–5 at 2). Also pending is Plaintiff's motion for sanctions against Defendant, pursuant to Rule 11 of the Federal Rules of Civil Procedure, for Defendant's alleged failure to provide proper service of its motion to dismiss. (Dkt. 309).

For the reasons set forth below, the Court denies Defendant's motion to dismiss without prejudice to renewal, and Plaintiff's motion for sanctions is denied.

## BACKGROUND AND PROCEDURAL HISTORY

This case has been pending in this Court for nine years. On March 18, 2008, Plaintiff filed a complaint against WaMu, asserting claims arising out of her eviction as a no-fault tenant from her former residence in Corning, New York, following a foreclosure on that property.[2] (Dkt. 1). In the main, Plaintiff argues that Defendant improperly stored and took possession of her personal property in the wake of the evic-

tion. (*See id.*). At this stage of the proceedings, three of Plaintiff's claims remain: (1) a claim for a violation of the New York Truth–in–Storage Act; (2) a claim for conversion of Plaintiff's personal property; and (3) an intentional tort claim. (Dkt. 293 at 1–2).

Several months after commencement of this litigation, on September 25, 2008, the Office of Thrift Supervision declared Washington Mutual Bank insolvent and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver for WaMu. (Dkt. 303–1 at ¶ 4; Dkt. 303–2 at 6). On the same date, the FDIC transferred to JPMC certain assets and liabilities of WaMu, pursuant to a Purchase and Assumption Agreement ("P & A Agreement") (Dkt. 303–2). (Dkt. 303–1 at ¶ 5).

On October 1, 2008, the FDIC published in several newspapers (including *The Wall Street Journal, Seattle Times,* and other publications) a "Notice to Creditors and Depositors of Washington Mutual Bank, Henderson, NY," stating that the FDIC had been appointed as receiver to handle all matters relating to WaMu. (Dkt. 303–3 at 2). The Notice informed all creditors having claims against WaMu that they "must submit their claims in writing, together with proof of the claims, to the [FDIC] by December 30, 2008 (the 'Bar Date').…" (*Id.*). It further informed such creditors that "failure to file such claims by the Bar date will result in disallowance by the [FDIC], the disallowance will be final, and further rights or remedies with

**2.** Plaintiff had also named as a defendant Triple C Transportation, Inc., d/b/a Advanced Moving & Storage, LLC ("Triple C"). (Dkt. 1). On May 16, 2008, before issue was joined, the Court ordered Plaintiff to show cause why the complaint should not be dismissed for lack of subject matter jurisdiction because it appeared that that complaint failed to allege complete diversity, as required by 28 U.S.C. § 1332, given that both Plaintiff and Triple C

were both citizens of New York. (Dkt. 5 at 4). In response, Plaintiff argued that she was not a citizen of New York, but also requested, as an alternative, that the Court dismiss Triple C as a defendant if it found that complete diversity was lacking. (Dkt. 6 at 9). Acting on Plaintiff's alternative request, the Court dismissed Triple C as a party to the litigation on December 15, 2008. (Dkt. 7 at 6).

regard to the claims will be barred." (*Id.*). The FDIC republished the notices in the Wall Street Journal on October 31, 2008 (Dkt. 303–4), and on December 1, 2008 (Dkt. 303–1 at ¶ 7).

Plaintiff has not submitted a claim with the FDIC, either before the December 30, 2008, bar date or at any point thereafter. (*Id.* at ¶ 8; *see generally* Dkt. 308–2).

On March 30, 2009, the Court granted Plaintiff's motion to amend the caption to replace "Washington Mutual Inc. d/b/a WM Specialty Mortgage LLC" with "WM Specialty Mortgage LLC." (Dkt. 17 at 3).

On June 1, 2009, WM Specialty Mortgage, LLC moved to dismiss the complaint. (Dkt. 28). On July 16, 2009, Defendant filed a reply to Plaintiff's opposition to the motion to dismiss. (Dkt. 49). In a footnote within that reply, Defendant stated: "Due to the acquisition by JP Morgan Chase, WM Specialty Mortgage LLC is now known as JPMC Specialty Mortgage LLC." (*Id.* at 2 n.2). On August 5, 2009, the Court partially granted WM Specialty Mortgage, LLC's motion to dismiss the complaint. (Dkt. 67). The Court also ordered the Clerk of Court to amend the caption to replace "WM Specialty Mortgage LLC" with "JPMC Specialty Mortgage, LLC" in light of Defendant's representation. (*Id.* at 1 n.1). The Court denied the motion to dismiss with respect to Plaintiff's Truth–in–Storage Act, intentional torts, and conversion claims. (*Id.* at 15).

On June 30, 2015, the case was transferred to the undersigned. (Dkt. 275). On September 22, 2015, this Court adopted Magistrate Judge McCarthy's Report and Recommendation (Dkt. 247) to deny Defendant's motion for summary judgment (Dkt. 235) in its entirety.

A trial date status conference was set for May 4, 2016,[3] and subsequently adjourned when, on April 27, 2016, Defendant moved to dismiss the complaint for lack of subject matter jurisdiction. (Dkt. 303; Dkt. 304). On May 23, 2016, Plaintiff filed a response in opposition to Defendant's motion to dismiss (Dkt. 308), as well as a motion for sanctions (Dkt. 309). Defendant filed a reply in further support of its motion to dismiss on June 1, 2016 (Dkt. 313), and a declaration in opposition to Plaintiff's motion for sanctions on June 7, 2016 (Dkt. 315). On June 6, 2016, Plaintiff filed a corrected declaration in support of her response in opposition to Defendant's motion to dismiss. (Dkt. 314).

## MOTION TO DISMISS

### I. Standard of Review

■ Defendant purports to move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). A Rule 12(b)(1) motion is subject to a pre-answer limitation: it "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Because Defendant has filed an answer to the complaint (Dkt. 74), a Rule 12(b)(1) motion is not the correct procedural means for challenging the Court's subject matter jurisdiction. Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("The objection that a federal court lacks subject-matter jurisdiction ... may be raised by a party, or by a court on its own initiative,

---

**3.** This status conference was originally held on April 5, 2016, but Plaintiff did not appear, instead communicating with the Court that during her travels she was involved in a car accident. (Dkt. 298; Dkt. 302). The trial status conference was then reset for May 4, 2016. (Dkt. 302).

at any stage in the litigation, even after trial and the entry of judgment." (citation omitted)). Thus, the Court will construe Defendant's motion as a motion to dismiss pursuant to Rule 12(h)(3). *See Bell v. Ramirez*, No. 13-cv-7916 (PKC), 2014 WL 7178344, at *2 (S.D.N.Y. Dec. 9, 2014) (construing post-answer Rule 12(b)(1) motion as Rule 12(h)(3) motion); *Greystone Bank v. Tavarez*, No. 09-CV-5192 (SLT), 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010) (collecting cases).

 The standard governing a Rule 12(h)(3) motion is the same as that governing a motion under Rule 12(b)(1). *Bell*, 2014 WL 7178344, at *2. A district court properly dismisses an action under Rule 12(b)(1) for lack of subject matter jurisdiction if the court "lacks the statutory or constitutional power to adjudicate it. ..." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

## II. Analysis

 Defendant moves to dismiss Plaintiff's complaint, arguing that Plaintiff's failure to exhaust the administrative remedies required by FIRREA deprives this Court of subject matter jurisdiction. (Dkt. 303–5 at 2). FIRREA establishes an administrative review process for claims against a failed bank for which the FDIC has been appointed receiver. *See* 12 U.S.C. § 1821(d). Under this process, the FDIC determines whether to disallow such claims or allow and pay them. *Id.* § 1821(d)(5). FIRREA contains a provision that limits the jurisdiction of federal courts to hear certain claims: "Except as otherwise provided in this subsection, no court shall have jurisdiction over ... any claim relating to any act or omission of [an] institution [in receivership] or the [FDIC] as receiver." *Id.* § 1821(d)(13)(D).[4] "[S]ection 1821(d)(13)(D), when read in conjunction with the rest of section 1821(d), creates a requirement that all claims must be presented to the FDIC before a claimant may seek judicial review." *Carlyle Towers Condo. Ass'n, Inc. v. F.D.I.C.*, 170 F.3d 301, 307 (2d Cir. 1999).

 Whether Plaintiff's claims are subject to this exhaustion requirement depends, in part, on whether JPMC assumed WaMu's potential liability to Plaintiff. For the reasons discussed below, the Court finds that Defendant's argument that WaMu's potential liability to Plaintiff was expressly excluded from the P & A Agreement (and thus not assumed by JPMC) is not supported by the language of the agreement. On the other hand, there is not enough information in the record for this Court to conclude definitively that JPMC assumed WaMu's potential liability to Plaintiff. As a result, the Court cannot conclude based on the record before it that Plaintiff's claims are barred by FIRREA under § 1821(d)(13)(D) or that this Court lacks subject matter jurisdiction. However, as noted above, it is ultimately Plaintiff's burden to establish subject matter juris-

4. Whether this provision allows courts to retain jurisdiction to entertain claims asserted in lawsuits, like this one, that were filed pre-receivership and where that administrative process is unexhausted is a question that has divided the circuit courts and remains unresolved in the Second Circuit. *See Bloom v. F.D.I.C.*, 738 F.3d 58, 61 n.1 (2d Cir. 2013) (recognizing circuit split but declining to reach the question).

diction, and of course, the lack of subject matter jurisdiction cannot be waived. Thus, while the Court is denying the motion to dismiss based on the record before it, that determination is made without prejudice.

Under Section 2.1 of the P & A Agreement, JPMC agreed to assume certain liabilities of WaMu:

> **Liabilities Assumed by Assuming Bank.** Subject to Sections 2.5 and 4.8, the Assuming Bank expressly assumes at Book Value (subject to adjustment pursuant to Article VIII) and agrees to pay, perform, and discharge, *all of the liabilities of the Failed Bank which are reflected on the Books and Records of the Failed Bank as of Bank Closing,* including the Assumed Deposits and all liabilities associated with any and all employee benefit plans, except as listed on the attached Schedule 2.1, and as otherwise provided in this Agreement (such liabilities referred to as "Liabilities Assumed"). Notwithstanding Section 4.8, the Assuming Bank specifically assumes all mortgage servicing rights and obligations of the Failed Bank.

(Dkt. 303–2 at 13 (emphasis added)).

Defendant argues that Section 2.5[5] expressly excluded any assumption by JPMC of Plaintiff's claims. (Dkt. 313 at 10–11). According to Defendant, "Plaintiff's claims in this case revolve around her eviction from property owned by the [WM Specialty Mortgage, LLC] through foreclosure," so "they necessarily 'arise[ ]' in connection with the Failed Bank's lending or loan purchase activities,' and are not assumed by Defendant." (*Id.* at 11 (quoting P & A Agreement Section 2.5)).

A review of Section 2.5 in its entirety—rather than the excerpt cited by Defendant—undermines this argument. Section 2.5 states as follows:

> **Borrower Claims.** Notwithstanding anything to the contrary in this Agreement, *any liability associated with borrower claims for payment of or liability to any borrower for monetary relief or that provide for any other form of relief to any borrower,* whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, *related in any way to* any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, *or otherwise arising in connection with the Failed Bank's lending or loan purchase activities* are specifically not assumed by the Assuming Bank.

(*Id.* at 14 (italicized emphasis added). Both the title of this section ("Borrower Claims") and the italicized language above plainly indicate that Section 2.5 applies only to "borrower claims." That term modifies the subsequent clauses of Section 2.5, including the language on which Defendant relies: "arising in connection with the Failed Bank's lending or loan purchase activities" (Dkt. 313 at 11). *See Cassese v. Washington Mut., Inc.,* No. 05 CV 2724(ADS)(ARL), 2008 WL 7022845, at *3 (E.D.N.Y. Dec. 22, 2008) (construing what appears to be the same P & A Agreement as not including assumption of borrower claims).

---

**5.** Other sections of the P & A Agreement that identify disclaimed liabilities are Section 4.8 and Schedule 2.1, but neither appear to be pertinent to the resolution of Defendant's motion to dismiss. (Dkt. 303–2 at 21, 40). Defendant does not argue otherwise. (*See* Dkt. 313 at 10–11).

The P & A Agreement does not define the term "borrower," (*id.* at 7–13 (setting forth definitions)), but Plaintiff clearly is not one. Indeed, Defendant makes no attempt to argue otherwise, instead simply ignoring Section 2.5's reference to "borrower."

Black's Law Dictionary defines a "borrower" as "[a] person or entity to whom money or something else is lent." *Borrower, Black's Law Dictionary* (10th ed. 2014). Plaintiff was not a borrower of WaMu; rather, she was a tenant living in a rental property that was foreclosed upon by WaMu. According to Defendant's Local Rule 56 Statement of Material Facts submitted in connection with the summary judgment motion, "Plaintiff rented the property located at 187 West 5th Street, Corning, New York .... from Mi Hee Cho for approximately five (5) years" (Dkt. 238-1 at 1), while "Cho was the sole obligor on the note and the sole mortgagor on the subject mortgage" (*id.* at 2). Thus, while Cho may have been a borrower, and Section 2.5 of the P & A Agreement may have excluded JPMC's assumption of any liabilities owed to Cho, that provision in the P & A Agreement plainly does not apply to Plaintiff.

JPMC raised a similar argument—that a plaintiff's "claims against it as successor-in-interest to WaMu Bank [were] barred by the administrative exhaustion requirements of FIRREA"—in *Federal Housing Finance Agency v. JPMorgan Chase & Co.*, 902 F.Supp.2d 476, 500 (S.D.N.Y. 2012). The district court rejected the exhaustion argument, concluding that JPMC's assumption of liabilities rendered FIRREA inapplicable. *Id.* at 502. Although, unlike in this case, JPMC did not directly contest the allegations that it had assumed the liabilities at issue in that case pursuant to the P & A Agreement, the district court explained how FIRREA can-

not apply to liabilities that JPMC assumed. *Id.* at 501–02. The court noted that the jurisdiction-stripping provision of FIRREA, § 1821 (d)(13)(D), could, "on first blush, be construed to bar any lawsuit that is in any way related to an 'act or omission' of a failed bank or the FDIC." *Id.* at 501 (quoting § 1821(d)(13)(D)). But the court pointed out that the Second Circuit has interpreted the term "claims" for purposes of § 1821(d)(13)(D) in a limited way, such that the jurisdictional bar applies to " 'only claims that could be brought under the administrative procedure of § 1821(d), not any claim at all involving the FDIC' or, by implication, the failed bank." *Id.* at 501 (quoting *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 921 (2d Cir. 2010)). The district court further explained:

> [A]s FIRREA's judicial review provision suggests, the administrative procedures were designed to permit a claimant to "seek[ ] a determination of rights with respect to, *the assets of any depository institution for which the Corporation has been appointed* receiver." [12 U.S.C. § 1821 (d)(13)(D) ] But the assets—and liabilities—at issue here have passed, by operation of the [P & A Agreement], to JPMorgan, and *FIRREA's claims procedure includes no provision for impleading the purchaser of a failed bank's assets and liabilities.* Thus, the claims that [the plaintiff] asserts here could not be brought under the administrative procedures of § 1821(d), making FIRREA's exhaustion requirement inapplicable.

*Id.* at 502 (emphasis added). The Court finds this reasoning persuasive. In other words, because FIRREA does not contemplate administrative review of claims that have passed to the purchasing bank, that statute does not apply to any claims assumed by JPMC through virtue of the P & A Agreement. *See id.*

Defendant relies on *Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373 (6th Cir. 2008), for the argument that FIRREA applies even though JPMC is named as the defendant. (Dkt. 303–5 at 6). Defendant further argues that "it is the FDIC—not a court—that has primary jurisdiction to determine whether a particular liability remained with the FDIC or was assumed by a successor bank." (*Id.*). Defendant's reliance on *Village of Oakwood* is unpersuasive for two reasons. First, it is not apparent that *Village of Oakwood* stands for the proposition that the FDIC is charged with interpreting the P & A Agreement; Defendant does not cite any specific portion of that case for it, and the Court finds none. *See also Cassese*, 2008 WL 7022845, at *3 (court interpreted meaning of Section 2.5 of P & A Agreement, and did not defer to FDIC on that issue).

Second, as the district court in *Federal Housing Finance Agency* explained, whether the assuming bank took on the liability and whether exhaustion occurred were not at issue in *Village of Oakwood*: "As the court's factual recitation [in *Village of Oakwood*] makes clear, however, the assuming bank had not agreed to purchase the liabilities at issue, and the plaintiffs had already made claims related to those same liabilities through FIRREA's administrative-claims procedure." 902 F.Supp.2d at 502 (citing *Village of Oakwood*, 539 F.3d at 376) ("These additional deposits were the liabilities of the receivership, not [the assuming bank]."). Moreover, the claims asserted in *Village of Oakwood* were based primarily on the conduct of FDIC as receiver. *See id.*; *Village of Oakwood*, 539 F.3d at 386 ("[A]ll of [plaintiffs'] claims against [the assuming bank] are directly related to acts or omissions of the FDIC."). Thus, *Village of Oakwood* is distinct from a case in which the assuming bank took on the liability of a failed bank by way of an agreement with the FDIC.

Nor do *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207 (9th Cir. 2012), or *Aber–Shukofsky v. JPMorgan Chase & Co.*, 755 F.Supp.2d 441 (E.D.N.Y. 2010), which are additional cases cited by Defendant (Dkt. 313 at 11), persuade the Court that claims assumed by JPMC would be subject to exhaustion. In *Benson*, the Ninth Circuit held that "FIRREA's jurisdictional bar applies to claims asserted against a purchasing bank when the claim is based on the conduct of the failed institution," rejecting plaintiffs' argument that exhaustion was not required because JPMorgan had assumed the liability through the P & A Agreement. 673 F.3d at 1214–15. In *Aber–Shukofsky*, the district court concluded that FIRREA "applies with equal force to a successor in interest to the failed institution." 755 F.Supp.2d at 447. Those decisions are not persuasive to the extent that they are in contrast (*Benson*) or fail to grapple (*Aber–Shukofsky*) with the Second Circuit's narrower interpretation of a "claim"—that is, as one that could be brought under the administrative procedure of § 1821(d), not any claim at all involving the failed bank, *Bank of New York*, 607 F.3d at 921. *See Fed. Hous. Fin. Agency*, 902 F.Supp.2d at 502.

This conclusion that Section 2.5 did not exclude JPMC's assumption of liability for Plaintiff's claims is only further buttressed by the fact that JPMC never raised this issue until close to a decade after commencement of the litigation. Indeed, there have been prior dispositive motions filed with the Court, and never in those motions did JPMC raise this issue. Instead, JPMC identified itself to the Court as the proper defendant in this action in reply papers filed in July 2009, only months after the receivership began in September 2008 and the expiration of the bar date in December

2008. (Dkt. 49 at 2 n.2). It is difficult to understand why, only months after those events, JPMC did not raise the issue of administrative exhaustion—or at any point during the motion practice that followed. (*E.g.*, Dkt. 67; Dkt. 235). Together, these circumstances cast doubt on Defendant's representation that its "failure to make this motion sooner was the result of oversight and mistake." (Dkt. 313 at 7). At a minimum, they certainly undercut the argument that Section 2.5 of the P & A Agreement excluded JPMC's assumption of liability for Plaintiff's claims.

Thus, based on the above, this Court concludes that Section 2.5 of the P & A Agreement does not apply to Plaintiff's claims, and thus cannot be interpreted as meaning that JPMC did not assume potential liability for Plaintiff's claims from WaMu. On the other hand, this Court cannot determine on the record before it that JPMC definitively assumed from WaMu potential liability for Plaintiff's claims. Specifically, Section 2.1 indicates that JPMC assumed WaMu's liabilities "which are reflected on the Books and Records of the Failed Bank as of Bank Closing..." (Dkt. 303–2 at 13). While the Court suspects that the claims in this lawsuit would have been reflected on WaMu's Books and Records, it cannot definitively reach that conclusion based on the record before it. If, in fact, JPMC did not assume WaMu's potential liability for Plaintiff's claims, the Court would then have to resolve the thornier jurisdictional issue as to whether Plaintiff's pre-receivership claims required exhaustion, the failure of which would divest this Court of jurisdiction. *See Bloom*, 738 F.3d at 61.

For the foregoing reasons, the Court denies Defendant's motion to dismiss without prejudice. (Dkt. 303).

## MOTION FOR SANCTIONS

Plaintiff moves this Court to impose sanctions against Defendant pursuant to Fed. R. Civ. P. 11. (Dkt. 309). Plaintiff argues that Defendant "has intentionally not provided proper service of [its] Motion to Dismiss (Dkt. 303) and numerous other [m]otions, causing undue prejudice on Plaintiff. Defendant also did not file a Certificate of Service for Dkt. 303, violating F[ed.] R. Civ. P. 5 to an extent which requires remedy." (*Id.* at 1). Defendant opposes sanctions on four grounds: (1) Rule 11 does not contemplate sanctions for failure to serve a motion; (2) the failure to properly serve the motion to dismiss was unintentional; (3) Plaintiff's motion is procedurally defective for failure to comply with the "safe harbor" provision of Rule 11; and (4) Plaintiff suffered no prejudice because she received the motion to dismiss by email one day after filing. (Dkt. 315).

### I. Relevant Facts

The facts relevant to the motion for sanctions are as follows. Defendant filed its motion to dismiss on April 27, 2016. (Dkt. 303). The motion was not accompanied by a Certificate of Service. (*See id.*). According to Plaintiff, she initially learned of the motion due to an e-mail from this Court's staff, referencing the filing of the motion. (Dkt. 309 at 2). Plaintiff then emailed Defendant, asking for a copy of the motion given the "prior arrangement ... to email all motions to the Plaintiff." (Dkt. 315–1 at 2). Defendant's counsel replied on April 28, 2016, stating that the requested documents were attached and that he would "mail them out to [her] by tomorrow also." (Dkt. 309–1 at 11; Dkt. 315–1 at 2). That email lists the Notice of Motion, Memorandum of Law, Declaration in Support, and three exhibits as attachments. (*See* Dkt. 315–1 at 2).

Plaintiff alleges that she received the motion to dismiss by mail on May 11, 2016, and that it had been incorrectly addressed to "Robinson St." instead of "Robinwood St." (Dkt. 309 at 3; Dkt. 309–1 at 13). Plaintiff further contends that Defendant's Notice of Bankruptcy Filing (Dkt. 9) was not served. (Dkt. 309–1 at 2).

## II. Standard for Rule 11 Sanctions

Under Fed. R. Civ. P. 11(b),

> an attorney who presents "a pleading, written motion, or other paper" to the court thereby "certifies" that to the best of his knowledge, information, and belief formed after a reasonable inquiry, the filing is (1) not presented for any improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) supported in facts known or likely to be discovered on further investigation.

*Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 156 (2d Cir. 2010) (quoting Rule 11(b)). Failure to adhere to Rule 11(b) may lead to sanctions: "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

A motion for sanctions pursuant to Rule 11 is subject to certain procedural requirements. The motion "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)" and "be served under Rule 5." Fed. R. Civ. P. 11(c)(2). However, the motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* Failure to comply with this so-called "safe harbor" provision, which specifies that a motion for sanctions "must not be presented to the court until the alleged violator is afforded twenty-one days to withdraw or correct the offending document," may result in the motion for sanctions being disallowed as untimely. *Lawrence*, 620 F.3d at 156.

## III. Analysis

■ Rule 11 sanctions are not warranted in this case. First, Plaintiff concedes that she failed to comply with the "safe harbor" provision of Rule 11(c)(1)(2). (Dkt. 309–1 at 4). In her memorandum of law in support of her motion for sanctions, she states that "[t]here is usually a 21–day period associated with sanctions per F[ed.] R. Civ. P. 11(b), but since Defendant's lack of proper service has no possible remedy, and Plaintiff's request is simply an order asking Defendant why sanctions should not be filed, Plaintiff has submitted this motion for sanctions." (*Id.*). As a result of failing to serve the motion on Defendant in compliance with Rule 11(c)(1)(2), Plaintiff's motion for sanctions is procedurally defective and must be disallowed. *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) ("The safe-harbor provision is a strict procedural requirement."); *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003) ("[T]he 'safe harbor' provision functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission."); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328–29 (2d Cir. 1995) (rejecting motion

for sanctions under Rule 11 because non-movant was not served twenty-one days prior to the sanctions motion).

Second, Plaintiff demonstrates no prejudice resulting from the manner in which she received the motion to dismiss. She received the motion by email one day after filing and by mail 13 days later, on May 11, 2016. (Dkt. 309 at 3). The Court is not persuaded by Plaintiff's contention that her belated receipt of the motion by mail hindered her ability to prepare a response, which was due one week later. The record demonstrates that Plaintiff had a copy of the motion by email, and if she needed additional time to prepare her response, she could have requested an extension from the Court. Moreover, the Court is denying Defendant's motion to dismiss, thus further negating the legitimacy of any claimed prejudice on the part of Plaintiff. Accordingly, Plaintiff's motion for sanctions is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction (Dkt. 303) is denied without prejudice to renewal, and Plaintiff's motion for sanctions (Dkt. 309) is denied.

SO ORDERED.