# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN HENRICHS; ANNE HENRICHS,
              *Plaintiffs-Appellants,*

              v.

VALLEY VIEW DEVELOPMENT, a
California corporation; FEDERAL
DEPOSIT INSURANCE CORPORATION, a
Federal corporation; TIMCOR
EXCHANGE CORPORATION, dba
Timcor Financial Corporation;
MARC GELMAN, an individual;
MICHAEL BLAHA, an individual;
GRANADA PLAZA ASSOCIATES LTD.,
a California limited partnership,
              *Defendants-Appellees.*

No. 04-56470

D.C. No.
CV-04-04225-CAS

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
September 12, 2006—Pasadena, California

Filed January 16, 2007

Before: J. Clifford Wallace, M. Margaret McKeown, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge McKeown

597

## COUNSEL

Richard Blasco, Hunt, Ortman, Blasco, Palffy & Rossell, Pasadena, California, and F. Glenn Nichols, Law Offices of F. Glenn Nichols, Pasadena, California, for the appellants.

Barry R. Edwards, Spiegelman & Edwards, Beverly Hills, California, for appellees Valley View Development and Marc Gelman.

Kathleen V. Gunning and Mary Riche, Federal Deposit Insurance Corporation, Washington, DC, and Michael H. Bierman, Luce Forward Hamilton & Scripps, LLP, Los Angeles, California, for appellee Federal Deposit Insurance Corporation.

Peter L. Weinberger and A. Douglas Mastroianni, Peter L. Weinberger & Associates, Los Angeles, California, for appellees Michael Blaha and Granada Plaza Associates, Ltd.

## OPINION

McKEOWN, Circuit Judge:

This appeal stems from a quiet title action that began in Los Angeles Superior Court but was resuscitated in federal court after the California courts ruled against appellants John and Anne Henrichs ("Henrichs") on all issues. We consider whether the district court had subject matter jurisdiction over Henrichs' claims arising from a California state court judgment rendered against him. After a series of real estate transactions among Henrichs, Valley View Development ("Valley View"), Marc Gelman, Michael Blaha, and Granada Plaza Associates ("GPA") turned sour, Valley View filed a claim to quiet title in Los Angeles County Superior Court. Henrichs cross-claimed, alleging breach of contract and indemnification claims. The Superior Court, the California Court of

Appeal, and the California Supreme Court all held in favor of Valley View and denied Henrichs relief on all claims.

Having extinguished all avenues for relief in the California courts, Henrichs filed suit in the United States District Court for the Central District of California. The district court held that it lacked jurisdiction under the *Rooker-Feldman* doctrine to review the state court judgment and Henrichs' associated claims and consequently dismissed the action. We now affirm, albeit on slightly different grounds. At issue is whether Henrichs' claims are barred by the *Rooker-Feldman* doctrine which, in general terms, prevents "a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983), *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)). Looking at each claim individually, as we must do, we conclude that two claims are barred by *Rooker-Feldman*, one claim fails on mootness grounds, and another based upon res judicata.

## BACKGROUND

### I.   FACTUAL BACKGROUND

Although the intricacies of Henrichs' claims are not before us, the chronology of events, which includes various convoluted transactions, is helpful to understanding the relationship between the state and federal court actions. Henrichs' series of lawsuits arise from a dispute relating to two plots of land in Granada Hills, California. In 1990, defendant Valley View owned property in Granada Hills that included two subdivisions, the Balboa lot and the Chatsworth lot. The GPA entity was formed to purchase only the Chatsworth lot from Valley View. John Henrichs, Michael Blaha, and Marc Gelman, Valley View's president and owner, were the original limited partners in GPA.

At that time, the final tract map separating the Balboa and Chatsworth lots had not been recorded. GPA and Valley View expected this approval would take significant time, and without a final tract map, the Chatsworth lot could not be sold separately from the Balboa lot. As a result, GPA purchased both lots from Valley View.

The parties signed an agreement (the "Ground Lease") in which Valley View leased the Balboa lot for one dollar per year for 99 years from GPA and Valley View received an option to purchase the lot back from GPA for one dollar when the final tract map was recorded. The Ground Lease provided that if Valley View exercised the purchase option, GPA would convey the Balboa lot to Valley View in fee simple, free of all liens and encumbrances.

GPA obtained a construction loan of almost $4 million from Capital Bank of California to finance construction on the Chatsworth lot. The loan agreement stated that the entire property — both lots — was collateral for the loan.

The final tract map was ultimately recorded in January 1992, and Valley View exercised the option in the Ground Lease to buy back the Balboa lot. Valley View believed that it had received title free and clear of any liens, including the pledge of collateral in the loan from Capital Bank.

In June 1993, the Federal Deposit Insurance Corporation ("FDIC") acquired the loan when it was appointed receiver of Capital Bank. GPA defaulted on the loan in 1994.

Following the default, GPA, Gelman, and Blaha agreed that GPA would pay the FDIC $300,000, and in exchange, the FDIC would cancel or assign the loan and the accompanying deed. The agreement (the "FDIC Settlement Agreement") contained an indemnification clause and a proviso that bound all parties to the agreement and their representatives and successors. GPA decided that the FDIC should assign the loan

and accompanying deed, which occurred through a separate agreement (the "Assignment Agreement") in approximately the following shares: 22% to Henrichs, 12% to Randy Carpenter, and 66% to Blaha Construction and Development.

## II.   PROCEEDINGS IN STATE COURT

In 1996, Gelman obtained a preliminary title report that reflected a lien on the Balboa lot. Valley View then demanded that the assignees of the note — Henrichs, Carpenter, and Blaha Construction and Development — reconvey the deed to Valley View to eliminate the lien. When the assignees refused to reconvey, Valley View filed a state court action to quiet title to the Balboa lot. Henrichs filed a cross-complaint alleging causes of action for indemnification under the FDIC Settlement Agreement and breach of contract by GPA, Gelman, and Blaha for failing to indemnify Henrichs.

The Los Angeles County Superior Court held that Valley View owned the Balboa lot free and clear of any encumbrance based on the Capital Bank loan and rejected Henrichs' claims for breach of contract and indemnification. The California Court of Appeal affirmed, and the California Supreme Court denied review.

During the pendency of the proceedings in the state courts, Valley View sold the Balboa lot for $550,000. Valley View placed these funds in a trust account with Timcor Exchange Corporation ("Timcor") pending the outcome of the state court action.

## III.   PROCEEDINGS IN THE DISTRICT COURT

Following his loss in state court, Henrichs filed a suit in federal court. The complaint asserted four claims: 1) a request for a declaratory judgment voiding the state court judgment awarding the Balboa lot to Valley View in fee simple and removing the lien on the property; 2) breach of the

Assignment Agreement by the FDIC; 3) a claim for indemnification against GPA, Gelman, and Blaha for damages and legal expenses incurred by the state court litigation; and 4) a request for an injunction barring Timcor from giving Valley View the proceeds from the Balboa lot's sale because, according to Henrichs, Valley View was not entitled to those profits. The district court held that the *Rooker-Feldman* doctrine barred all claims and dismissed the action for lack of subject matter jurisdiction.

## ANALYSIS

We affirm the dismissal of Henrichs' claims.[1] We conclude that the *Rooker-Feldman* doctrine bars the claim for declaratory relief. The claim against the FDIC is moot. The doctrine of res judicata precludes the claim for indemnity against GPA, Gelman, and Blaha. Additionally, both *Rooker-Feldman* and the Anti-Injunction Act bar the claim for injunctive relief.

[1] Before delving into a claim-by-claim analysis, we briefly outline the contours of the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine provides that federal district courts lack jurisdiction to exercise appellate review over final state court judgments. *Rooker*, 263 U.S. at 415-16; *Feldman*, 460 U.S. at 482 86; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005). Essentially, the doctrine bars "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced" from asking district courts to review and reject those judgments. *Id.* at 284. Absent express statutory authorization, only the Supreme Court has jurisdiction to reverse or modify a state court judgment. The clearest case for dismissal based on the *Rooker-Feldman* doctrine occurs when

---

[1]Subject matter jurisdiction is a question of law reviewed de novo. *Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1057 (9th Cir. 1996) (as amended). We may affirm the dismissal on any ground supported by the record. *Preminger v. Principi*, 422 F.3d 815, 820 (9th Cir. 2005).

"a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision . . . ." *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003).

**[2]** *Rooker-Feldman* does not override or supplant issue and claim preclusion doctrines. *Exxon Mobil*, 544 U.S. at 284. The doctrine applies when the federal plaintiff's claim arises from the state court judgment, not simply when a party fails to obtain relief in state court. *Noel*, 341 F.3d at 1164-65 (citing *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 729 (7th Cir. 1993)). Preclusion, not *Rooker-Feldman*, applies when " 'a federal plaintiff complains of an injury that was not caused by the state court, but which the state court has previously failed to rectify.' " *Noel*, 341 F.3d at 1165 (quoting *Jensen v. Foley*, 295 F.3d 745, 747-78 (7th Cir. 2002)).

## I.  DECLARATORY RELIEF CLAIM

**[3]** Henrichs argues that the state court exceeded its jurisdiction when it entered judgment against him. The request for relief is unambiguous. Henrichs asked the district court to "declare the State Court Judgment void, and enter judgment in favor of the Henrichs." Such a claim is squarely barred by *Rooker-Feldman*; a request to declare the state court judgment void seeks redress from an injury caused by the state court itself. *See Noel*, 341 F.3d at 1164-65.

Henrichs attempts to circumvent the jurisdictional bar by arguing that there was exclusive federal jurisdiction over all of his claims and thus the state court litigation was improper. To be sure, a state court judgment entered in a case that falls within the federal courts' exclusive jurisdiction may be collaterally attacked in a district court. *In re Gruntz*, 202 F.3d 1074, 1079 (9th Cir. 2000). The difficulty with Henrichs' argument is that there was no exclusive federal jurisdiction over the claims.

**[4]** Henrichs grounds the exclusive jurisdiction argument on the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183 (1989) (codified at various sections of Title 12). He relies on two provisions of the Act, which establishes the powers and responsibilities of the FDIC. *Id.* The first provision states that no court may grant equitable relief against the FDIC except as provided by FIRREA. 12 U.S.C. § 1821(j). The second provision states that individuals seeking to make claims that affect assets acquired by the FDIC in its capacity as a conservator or receiver must exhaust the FDIC's administrative claims process before seeking judicial review. 12 U.S.C. § 1821(d)(13)(D). *See Henderson v. Bank of New England*, 986 F.2d 319, 320-21 (9th Cir. 1993). Henrichs posits that the claims affect FDIC interests because the FDIC was the receiver of the assets of Capital Bank, and the FDIC in turn assigned the note to Henrichs.

**[5]** The jurisdictional bars to state court litigation set out in FIRREA are not applicable here. Section 1821(j) does not apply because the FDIC was not a party to the state court litigation. It was Henrichs, not the FDIC, who was ordered to reconvey the note and deed referencing the Balboa lot.

**[6]** Nor does § 1821(d)(13)(D) confer exclusive federal jurisdiction in this case. If, by citing this provision, Henrichs means to imply that the statute bars the state court's adjudication of the dispute with Valley View, he is mistaken — the requirement to exhaust administrative remedies applies only in an action against the FDIC as receiver. 18 U.S.C. § 1821(d)(13)(D); *see also McCarthy v. FDIC*, 348 F.3d 1075, 1080-81 (9th Cir. 2003) (holding that the exhaustion requirement applies to those who "challenge conduct by the FDIC as receiver"). At the time of the state court litigation, the FDIC had no interest in the note because it had already assigned the note. Although Henrichs attempts to paper over this fact by claiming that he stepped into the shoes of the FDIC for the purposes of the state court litigation, the statute

does not reach assignees of assets once owned by the FDIC. Therefore, because the FDIC was neither a party to the state court lawsuit nor did it retain an interest in the previously-assigned note, FIRREA does not confer exclusive federal jurisdiction over Henrichs' claims.

## II.   BREACH OF CONTRACT CLAIM

Henrichs next asserts a claim for damages against the FDIC stemming from the FDIC's alleged breach of the FDIC Settlement Agreement. Although this claim is not necessarily barred by *Rooker-Feldman*, it is moot. We — and the district court — have no jurisdiction over moot claims. *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 698 (9th Cir. 1984) (as amended).

**[7]** To satisfy Article III's case or controversy requirement, Henrichs "must have suffered some actual injury that can be redressed by a favorable judicial decision." *See FDIC v. Kooyomjian*, 220 F.3d 10, 15 (1st Cir. 2000) (holding that a claim against a failed bank was moot when the FDIC had determined there were no assets with which to satisfy the claim) (emphasis omitted). Henrichs may look only to the assets of the Capital Bank receivership to satisfy any breach of contract claim. *See First Ind. Fed. Sav. Bank v. FDIC*, 964 F.2d 503, 507 (5th Cir. 1992). The receivership distributed all of the failed bank's assets and was terminated in January 2001, fully three years before Henrichs raised the claim. No assets remain in the receivership to satisfy a late-filed claim, thus rendering the claim moot. *See Maher v. FDIC,* 441 F.3d 522, 525-26 (7th Cir. 2006); *Kooyomjian*, 220 F.3d at 15; *Adams v. Resolution Tr. Corp.*, 927 F.2d 348, 354 (8th Cir. 1991) (holding that where the Federal Savings and Loan Insurance Corporation would never possess any assets to satisfy the plaintiff's claim, the claim was moot).

## III.   INDEMNITY CLAIM

In the third claim, Henrichs asserts that GPA, Gelman, and Blaha must indemnify him for his legal expenses because he

is a successor to the FDIC Settlement Agreement. In state court proceedings, Henrichs asserted an identical cause of action for indemnification based on the same FDIC Settlement Agreement and against the same three defendants. The Los Angeles County Superior Court denied relief, the California Court of Appeal affirmed, and the California Supreme Court denied review.

**[8]** Res judicata prevents the district court from addressing Henrichs' indemnity claim. To determine the preclusive effect of a state court judgment, we look to state law. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 927 (9th Cir. 2006). In California, "[r]es judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002). For purposes of res judicata, Henrichs' claim for indemnity has been finally determined by a court of competent jurisdiction and we may not revisit it now.[2] *See Rice v. Crow*, 81 Cal. App. 4th 725, 736 (2000).

## IV. INJUNCTION CLAIM

In the final claim in district court, Henrichs seeks to enjoin Timcor from giving Valley View the proceeds from the sale of the Balboa lot. According to Henrichs, the state court judgment giving Valley View the lot in fee simple was void, so Valley View should not be able to appropriate profits from the lot's sale.

**[9]** Both the *Rooker-Feldman* doctrine and the Anti-Injunction Act, 28 U.S.C. § 2283, bar this claim. *Rooker-*

---

[2]This claim is not barred by *Rooker-Feldman* because GPA, Gelman, and Blaha allegedly caused Henrichs' injury when they failed to indemnify Henrichs. Thus, the injury alleged in this claim does not arise from a state court judgment, but rather from the actions of an adverse party; hence, *Rooker-Feldman* does not apply.

*Feldman* applies because the legal injuries Henrichs alleges arise from the state court's purportedly erroneous judgment. As framed by Henrichs, Valley View and Timcor possess funds from the sale of the Balboa lot only because the state court erred in awarding Valley View and Timcor that lot in the first place. Without the state court judgment, Valley View and Timcor would not have caused injury to Henrichs at all. Granting the injunction would require the district court to determine that the state court's decision was wrong and thus void. *Cf. Exxon Mobil Corp.*, 544 U.S. at 283-84 (holding that district courts do not have jurisdiction over cases in which plaintiffs complain of injuries caused by state court judgments).

**[10]** The requested relief also is barred by the Anti-Injunction Act, which precludes a federal court from granting "an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress . . . ." 28 U.S.C. § 2283. The Act's mandate extends not only to injunctions affecting pending proceedings, but also to injunctions against the execution or enforcement of state judgments. *See Atl. Coast Line R.R. Co. v. Bd. of Locomotive Eng'rs*, 398 U.S. 281, 287-88 (1970). An injunction may not be used to evade the dictates of the Act if the injunction effectively blocks a state court judgment. *Id*.

**[11]** The practical effect of the requested injunction would be to prevent Valley View from alienating the land in fee simple, which was the purpose of the quiet title action at the outset. To grant the relief would undo the effect of three California courts' unbroken agreement on the resolution of the issues Valley View presented and would disregard the principle of abstention the statute seeks to uphold. *Id.* at 284-88.

## CONCLUSION

Because the district court lacked jurisdiction over three of the claims and a fourth claim is barred by res judicata, we

affirm the district court's dismissal of the action.

**AFFIRMED.**