**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CHRISTINE M. SEARLE,

*Plaintiff - Appellant*,

v.

JOHN M ALLEN, in his official capacity as the treasurer of Maricopa County; COUNTY OF MARICOPA; ARAPAHO, LLC; AMERICAN PRIDE PROPERTIES, LLC,

*Defendants - Appellees*.

No. 24-4819

D.C. No.
2:24-cv-00025-JJT

OPINION

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted April 11, 2025
San Francisco, California

Filed August 28, 2025

Before: Sidney R. Thomas, Richard A. Paez, and Eric D. Miller, Circuit Judges.

Opinion by Judge Paez

# SUMMARY[*]

### *Rooker-Feldman* Doctrine

The panel affirmed in part and reversed in part the district court's dismissal of Christine Searle's action challenging (1) the foreclosure of her home to satisfy tax liens, (2) defendants' retention of the equity in her home exceeding the tax debt and related costs, and (3) the facial constitutionality of Arizona's then-governing law permitting the enforcement of tax liens by private parties.

The panel held that Searle's claims directly attacking the state court foreclosure judgment—on the grounds that the foreclosure violated the United States and Arizona Constitutions because it was a taking without a legitimate public purpose or constituted an excessive fine—were barred by the *Rooker-Feldman* doctrine, which provides that district courts lack subject matter jurisdiction to hear direct appeals from state court final judgments. Searle's federal suit complained of injuries caused by the foreclosure judgment and invited the district court to review and reject that judgment.

The panel held that Searle's claims challenging defendants' post-judgment retention of the surplus equity in her home were not barred by *Rooker-Feldman* given the Supreme Court's recent decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023), which clarified that individuals whose property is seized and sold to settle a tax

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

debt have a protected interest in the excess equity in their homes, notwithstanding a state foreclosure judgment.

Finally, the panel held that Searle's facial challenge to the constitutionality of Arizona's then-governing statute permitting the enforcement of tax liens by private parties without providing just compensation was not barred by *Rooker-Feldman*, but was moot because Arizona has amended the challenged law.

## COUNSEL

William E. Trachman (argued) and Grady J. Block, Mountain States Legal Foundation, Lakewood, Colorado; Veronica Lucero, Davillier Law Group LLC, Phoenix, Arizona; for Plaintiff-Appellant.

Sean M. Moore (argued) and Charles E. Trullinger, Attorneys, Civil Services Division; Rachel H. Mitchell, Maricopa County Attorney; Maricopa County Attorney's Office, Phoenix, Arizona; John L. Lohr Jr. (argued) and David B. Goldstein, Hymson Goldstein Pantiliat & Lohr PLLC, Scottsdale, Arizona; Jackson D. Hendrix, Burch & Cracchiolo PA, Phoenix, Arizona; for Defendants-Appellees.

David J. Deerson and Christina M. Martin, Pacific Legal Foundation, Sacramento, California, for Amicus Curiae Pacific Legal Foundation.

# OPINION

PAEZ, Circuit Judge:

Christine Searle failed to pay property taxes on her home in Maricopa County, Arizona. To secure payment, Maricopa County sold the tax liens on Searle's property for 2015 and 2016 to Arapaho, LLC Tesco. Arapaho ultimately filed a foreclosure action against Searle. When Searle failed to respond, Arapaho obtained a default judgment against her. The judgment declared that Searle has "no further legal or equitable right, title, or interest in the Property." Upon presentation of the judgment and pursuant to state law, Maricopa County Treasurer John Allen executed and delivered a deed to Arapaho conveying all rights and interest in the home, which Searle values at over $400,000. Arapaho promptly transferred the property to American Pride Properties, LLC.

Searle sued Arapaho, American Pride, Maricopa County, and Allen (collectively, "Defendants") in district court, challenging the foreclosure of her home, Defendants' retention of the equity in her home exceeding the tax debt and related costs, and the facial constitutionality of the then-governing state law, Ariz. Rev. Stat. § 42-18204(B) (2008). She alleged both federal and state claims, seeking damages, an injunction against eviction, and a declaratory judgment that the statute was unconstitutional.

The district court determined that the *Rooker-Feldman*[1] doctrine barred Searle from raising most of her claims in federal court and granted Defendants' motion to dismiss.

---

[1] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

Under the *Rooker-Feldman* doctrine, federal district courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

We affirm the district court's dismissal in part and reverse it in part. Searle's claims directly attacking the state court foreclosure judgment—on the grounds that the foreclosure violated the United States and Arizona Constitutions because it was a taking without a legitimate public purpose[2] or constituted an excessive fine—are barred. But her claims challenging Defendants' post-judgment retention of the surplus equity are not barred given the Supreme Court's recent decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023). There, the Supreme Court clarified that individuals whose property is seized and sold to settle a tax debt have a protected interest in the excess equity in their homes, notwithstanding a state foreclosure judgment. *Id.* at 639. Finally, Searle's facial challenge to the constitutionality of the governing statute is not barred by *Rooker-Feldman*, but it is moot because Arizona has amended the challenged law.

---

[2] Searle argues that the foreclosure of her house violated Fifth Amendment and Arizona constitutional prohibitions on governmental takings without a "public use," meaning that they serve no legitimate public purpose. This argument appears misguided because tax-lien foreclosures serve an obvious public purpose of providing public entities a permissible way to collect unpaid taxes and related costs. However, we do not need to decide this issue because it is outside the scope of the *Rooker-Feldman* analysis and the district court did not address it.

## I.

We briefly recite the allegations in Searle's operative Second Amended Complaint ("SAC"). In 2005, Searle purchased a home in Gilbert, Arizona, which she estimates is worth $400,000 to $500,000. After Searle accrued a property tax delinquency of $1,607.68, Maricopa County proceeded to enforce the property tax liens for 2015 and 2016. Pursuant to Ariz. Rev. Stat. § 42-18101(A) and § 42-18114, which direct the county treasurer to "secure the payment of unpaid delinquent taxes" by selling the tax liens by auction to a private purchaser,[3] the county then sold the liens to Arapaho. In 2021, Arapaho commenced an action in Arizona state court to foreclose one of the tax liens. *See* Ariz. Rev. Stat. § 42-18106.

When Searle did not file an answer, Arapaho obtained a default judgment against her. The judgment foreclosed Searle's right of redemption and ordered County Treasurer John Allen to deliver a deed conveying title to the property to Arapaho upon payment of a fee and presentation of the judgment. The judgment declared that Searle had "no further legal or equitable right, title, or interest in the Property." *Arapaho, LLC Tesco v. Searle*, No. CV2021-012279, 2021 WL 10425563, at *1 (Ariz. Super. Ct. Nov. 9, 2021). This language was drawn from Arizona's tax foreclosure statutes, which authorized private purchasers of tax liens to initiate foreclosure proceedings, after which "the parties whose rights to redeem the tax lien are thereby foreclosed have no

---

[3] The statute directs the county to sell the lien to the purchaser "who pays the whole amount of delinquent taxes, interest, penalties and charges due on the property, and who in addition offers to accept the lowest rate of interest on the amount so paid to redeem the property from the sale." Ariz. Rev. Stat. § 42-18114.

further legal or equitable right, title or interest in the property." Ariz. Rev. Stat. §§ 42-18201, 42-18204(B). Arapaho received the deed on February 1, 2022, and transferred the property to American Pride Properties shortly thereafter.

After entry of the default judgment, Searle appeared and moved to set aside the judgment on the ground that she did not receive notice of the foreclosure action. The state court denied the motion and Searle appealed, but the Arizona Court of Appeals affirmed. *See Arapaho LLC v. Searle*, No. 1 CA-CV 22-0478, 2023 WL 1830382 (Ariz. Ct. App. Feb. 9, 2023), *review denied* (Oct. 17, 2023). The Arizona Supreme Court denied review.

While Searle's petition for review to the Arizona Supreme Court was pending, the United States Supreme Court decided *Tyler v. Hennepin County*. *Tyler* held that when the government seizes and sells an individual's property to satisfy a tax debt, the Takings Clause of the Fifth Amendment, which applies to the states because of the Fourteenth Amendment, prohibits the government from taking more than is necessary to satisfy the debt and the costs of collection, unless the property owner receives just compensation for the excess equity. 598 U.S. at 637-39.

After the Arizona Supreme Court denied Searle's petition for review, she filed the instant lawsuit. The SAC names as defendants Arapaho, American Pride Properties, Maricopa County Treasurer John Allen, and Maricopa County. Citing *Tyler*, the SAC alleges that Defendants took Searle's property and retained hundreds of thousands of dollars more than her tax debt in violation of the United States Constitution, the Arizona Constitution, and Arizona state law.

Searle alleges nine federal and state claims. Claims one through three assert that Defendants violated the Takings Clause of the Fifth Amendment because they seized Searle's property and retained the excess equity "without a legitimate public use," and because they did not provide Searle with just compensation. In claim four, Searle asserts that Defendants violated the Eighth Amendment Excessive Fines Clause by seizing the entire equity in her property to recover a relatively small tax debt and retaining the excess equity. Claims five through seven allege violations of comparable provisions of the Arizona Constitution. Claim eight asserts that Maricopa County and Allen violated the Arizona Constitution's Gift Clause by allowing Arapaho and American Pride to acquire "a high-value property for a fraction of its worth." Finally, Searle alleges a state law unjust enrichment claim.

In 2024, the Arizona legislature amended the statutory scheme under which Searle's property was seized to address the Supreme Court's holding in *Tyler*. *See* S.B. 1431, 56th Leg., 2d Reg. Sess. (Ariz. 2024). The amendments created a process for property owners to seek return of the excess proceeds when a private lien purchaser forecloses and sells their property. *Id.*; *see* Ariz. Rev. Stat. § 42-18204 (2024).

Arapaho, American Pride, and Allen moved to dismiss Searle's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. The district court granted the motion in full, reasoning that it lacked subject matter jurisdiction because of the *Rooker-Feldman* doctrine. Stating that "whether *Rooker-Feldman* bars Plaintiff's claims turns on what Plaintiff alleges as her harm and from where that harm arose," the district court found that Searle's harm arose from the state court default judgment and not, as

Searle argued, from the treasurer's deed conveying the property after the judgment. The district court concluded that because the judgment decreed that Searle's right of redemption was "foreclosed and [she] ha[d] no further legal or equitable right, title, or interest in the Property," it also deprived her of "any right to surplus equity."

The district court further ruled that because the judgment had eliminated Searle's property rights in her home, all of her federal claims and most of her state claims were barred by *Rooker-Feldman*. Searle's federal and state takings claims were barred because "[t]o establish a violation of the Takings Clause, [a plaintiff] must first demonstrate that he has a property interest that is constitutionally protected." Because the state court judgment extinguished any underlying property interest, Searle could not bring a takings claim without effectively appealing the state court judgment. The district court likewise found that Searle's excessive fines claims were barred because they challenged the seizure of the property itself, which occurred upon entry of the state court judgment. With respect to Searle's unjust enrichment claim, the district court ruled that "[b]ecause Plaintiff challenges only Defendants' post-judgment retention of excess value, she can only show an impoverishment," an element of the claim, "if she first shows that she was entitled to the excess value she was deprived of." Because the state court judgment deprived her of any interest in the excess value, *Rooker-Feldman* foreclosed her claim. Although the district court concluded that Searle's state constitutional Gift Clause claim was not barred by *Rooker-Feldman*, it declined

to assert supplemental jurisdiction over it and therefore dismissed that claim.[4]

## II.

We review de novo a district court's dismissal for lack of subject matter jurisdiction under *Rooker-Feldman*. *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). We resolve a facial attack on the district court's subject matter jurisdiction as we would a Rule 12(b)(6) motion. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Accepting all factual allegations in the operative complaint as true and drawing all reasonable inferences in the plaintiff's favor, we determine whether the plaintiff's allegations are sufficient to invoke the court's jurisdiction. *Id*.

## III.

### A.

Established by *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the *Rooker-Feldman* doctrine provides that "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel*, 341 F.3d at 1154.

*Rooker-Feldman* also prohibits federal district courts from considering "de facto appeals"—suits in which "the adjudication of the federal claims would undercut the state ruling." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir.

---

[4] In addition to her arguments concerning the district court's application of *Rooker-Feldman*, Searle also argues that the district court erred in dismissing Defendant Allen sua sponte. This argument is misguided, as Allen had joined the motion to dismiss previously filed by Arapaho and American Pride.

2003). Thus, "*Rooker-Feldman* looks to federal law to determine 'whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.'" *Id.* at 900 (quoting *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)). And when the federal action constitutes a forbidden de facto appeal of a state court judgment, the federal court "must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel*, 341 F.3d at 1158. "Our circuit has emphasized that '[o]nly when there is already a forbidden de facto appeal in federal court does the 'inextricably intertwined' test come into play." *Cooper v. Ramos*, 704 F.3d 772, 778 (9th Cir. 2012) (quoting *Noel*, 341 F.3d at 1158).

The *Rooker-Feldman* doctrine "occupies 'narrow ground' and applies only in 'limited circumstances.'" *Brown v. Duringer Law Grp. PLC*, 86 F.4th 1251, 1253 (9th Cir. 2023) (quoting *Exxon*, 544 U.S. at 284, 291). "Namely, it 'is confined to . . . cases [1] brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments.'" *Id*. at 1254 (quoting *Exxon*, 544 U.S. at 284); *see generally Miroth v. County of Trinity*, 136 F.4th 1141, 1148-51 (9th Cir. 2025).

*Rooker* and *Feldman* remain the only cases in which the Supreme Court has found the doctrine to bar lower federal court jurisdiction. In *Rooker*, the plaintiffs brought a bill in equity to void a state court judgment for violating the Contracts Clause and the Fourteenth Amendment Equal Protection and Due Process Clauses, arguing that the judgment "gave effect to a state statute alleged to be in conflict with those clauses and did not give effect to a prior

decision in the same cause . . . which is alleged to have become the 'law of the case.'" 263 U.S. at 414-15. In other words, "*Rooker* held that when a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden de facto appeal." *Noel*, 341 F.3d at 1156.

And in *Feldman*, the Supreme Court held that the plaintiffs could not seek review in federal district court of the District of Columbia Court of Appeals' denial of their requests for waivers of a court rule preventing graduates of unaccredited law schools from sitting for the bar exam. 460 U.S. at 463, 482. To the extent that the plaintiffs mounted a general challenge to the constitutionality of that rule, however, the Supreme Court held that the district court did have subject matter jurisdiction. *Id*. at 482-83. The latter challenge could proceed because it "d[id] not require review of a judicial decision in a particular case." *Id*. at 487.

As *Rooker* and *Feldman* demonstrate, the applicability of the doctrine often turns on whether the federal plaintiff "asserts as a legal wrong an allegedly erroneous decision by a state court" or, conversely, "an allegedly illegal act or omission by an adverse party." *Noel*, 341 F.3d at 1164.

Our cases illustrate this distinction. For instance, in *Kougasian v. TMSL, Inc.*, the plaintiff lost two state court tort actions over her husband's death in a skiing accident. 359 F.3d 1136, 1137-38 (9th Cir. 2004). She then filed a federal suit reiterating her tort claims and seeking to set aside the state court judgments on the grounds that the defendant had engaged in fraudulent conduct affecting the outcome. *Id*. at 1138-39. Reversing the district court's dismissal under

*Rooker-Feldman*, we held that the plaintiff's causes of action based on alleged extrinsic fraud on the state court were not barred because they concerned a wrongful act by a party rather than an error by the court. *Id*. at 1140-41. And with respect to the tort claims, all of which had been litigated and decided in state court, we held that the claims were also not barred by *Rooker-Feldman* because the plaintiff "does not, in these causes of action, allege legal errors by the state courts; rather, she alleges wrongful acts by the defendants, such as negligently designing the ski run and negligently placing or failing to remove [a] rock." *Id*. at 1142.

In *Maldonado v. Harris*, we applied a similar rationale in holding that *Rooker-Feldman* did not bar the district court from hearing a suit seeking relief from an injunction issued by a state court. 370 F.3d 945, 950 (9th Cir. 2004). The state court injunction, which resolved a nuisance action brought by the California Department of Transportation ("Caltrans"), required Maldonado to comply with the state's Outdoor Advertising Act. *Id*. at 948. Maldonado's federal complaint challenged the constitutionality of that Act. *Id*. at 949. We held that "[t]he legal wrong that Maldonado asserts in this action is not an erroneous decision by the state court in the nuisance suit brought against Maldonado by Caltrans, but the continued enforcement by Caltrans of a statute Maldonado asserts is unconstitutional." *Id*. at 950. Thus, *Rooker-Feldman* did not bar the federal action even though it sought relief from the state court judgment. *Id*.

## B.

Here, under *Rooker-Feldman*, the district court lacked subject matter jurisdiction over Searle's claims directly challenging the foreclosure judgment. Those claims allege that the state court erred in divesting Searle of her property

rights in violation of the United States and Arizona Constitutions. Searle further alleges that the foreclosure judgment caused her injury—the loss of her home. However, not all of Searle's claims directly challenge the validity of the judgment. Those claims that allege that Defendants failed to provide her with just compensation for the surplus equity in her home exceeding her tax debt and collection costs are not barred by *Rooker-Feldman*. Rather, her claims challenging Defendants' retention of the surplus equity are based on a property right which is distinct from and survives the state court foreclosure judgment. *See Tyler*, 598 U.S. at 639. Similarly, Searle's facial challenge to the constitutionality of the governing statute, which authorized foreclosure sales by private lien purchasers without a procedure for returning surplus equity to the property owner, is not barred by *Rooker-Feldman*. But, it is moot.

## 1.

*Rooker-Feldman* bars Searle from directly challenging the state court foreclosure judgment in federal court. The judgment foreclosed Searle's right to redeem the tax lien on her property, ordered the county treasurer to execute and deliver a deed conveying the property to Arapaho upon its payment of the required fee, and decreed that Searle "ha[d] no further legal or equitable right, title, or interest in the Property." *Arapaho, LLC Tesco v. Searle*, 2021 WL 10425563, at *1.

Searle seeks relief under the Fifth Amendment Takings Clause and its Arizona analogue because the sale of the liens to Arapaho and the subsequent foreclosure judgment constituted a taking without a legitimate public use. She further alleges that the taking of the house constituted an excessive fine under the Eighth Amendment and Arizona's

constitutional analogue because the value of the house far exceeded her tax debt. These allegations are described in claims one, three, four, five, and seven of the SAC, although those enumerated claims also contain challenges to Defendants' retention of the surplus equity, which we discuss separately below.

Applying the *Exxon* test to determine whether *Rooker-Feldman* bars Searle's claims challenging the foreclosure as an invalid taking or an excessive fine, we conclude that it does and that the district court properly dismissed those claims for lack of subject matter jurisdiction. *See* 544 U.S. at 284. Before Searle filed her federal suit, the state court entered a default judgment against her, and, although she sought to vacate the default judgment, she was unsuccessful. In the words of the Supreme Court, she was a "state-court loser[]." *Id*. Further, her federal suit complains of injuries caused by the foreclosure judgment, and she invites the district court to review and reject that judgment on the grounds that it constituted an unconstitutional taking and an excessive fine. *See id*.

We held that *Rooker-Feldman* applied in an analogous context in *Henrichs v. Valley View Development*, 474 F.3d 609 (9th Cir. 2007). There, Valley View prevailed in a state court action and obtained a judgment quieting title to a piece of property ("the Balboa lot") against which Henrichs and two others asserted a lien. *Id*. at 612. While the state court proceeding was pending, Valley View sold the Balboa lot to a third party. *Id*. at 613. After the state court entered the quiet title judgment, Henrichs filed a federal suit seeking a declaratory judgment that the state court judgment was void because of several alleged jurisdictional defects. *Id*. at 613-14. We held that *Rooker-Feldman* "squarely barred" this claim. *Id*. at 614. Henrichs also sought an injunction

preventing Valley View from receiving the proceeds from the sale of the Balboa lot. *Id*. at 615. We held that *Rooker-Feldman* also barred this claim because the injury—Valley View's entitlement to the proceeds—was caused by the state court judgment and because "[g]ranting the injunction would require the district court to determine that the state court's decision was wrong and thus void." *Id*. at 616.

Searle asserts that it was not the state court's foreclosure judgment but the county's ensuing issuance of the treasurer's deed that caused the loss of her home, removing her claims from the ambit of *Rooker-Feldman*. But the foreclosure judgment authorized the Maricopa County Treasurer to transfer the deed and extinguished Searle's property rights to the house. *See Friedemann v. Kirk*, 5 P.3d 950, 952-53 (Ariz. Ct. App. 2000) (holding that under Ariz. Rev. Stat. § 42-18204, the owner's right of redemption was terminated by the entry of the foreclosure judgment, not by the treasurer's subsequent delivery of the deed). The delivery of the deed was a "mere formality." *Id*. at 253. Thus, we agree with the district court that *Rooker-Feldman* bars Searle's direct challenge to the foreclosure judgment and the transfer of the deed to Defendants Arapaho and American Pride. Her claims challenging the foreclosure as an invalid taking or an excessive fine are barred.

## 2.

*Rooker-Feldman*, however, does not bar Searle's challenge to Defendants' post-judgment retention of the excess equity, which she asserts should have been paid to her as just compensation for the taking of her home. Under *Tyler*, a property owner's right to just compensation for the surplus equity in a home taken to settle a tax debt survives the foreclosure judgment itself. 598 U.S. at 639. The district

court therefore erred in concluding that Searle's interest in the surplus equity in her home was "inextricably intertwined" with the foreclosure judgment and thus also barred by *Rooker-Feldman*. *See Cooper*, 704 F.3d at 779 (explaining that claims are inextricably intertwined where "the relief requested in the federal action would effectively reverse the state court decision or void its ruling" (quoting *Fontana Empire Ctr., LLC v. City of Fontana,* 307 F.3d 987, 992 (9th Cir. 2002))).

The SAC's enumerated claims one, two, and six directly challenge Defendants' failure to provide just compensation in violation of the Takings Clauses of the United States and Arizona Constitutions, [5] and claims three and five also challenge Defendants' post-judgment conduct in retaining the excess equity as a taking without a valid public use. The portions of Searle's claims that challenge the retention of excess equity rather than the foreclosure judgment itself are not barred by *Rooker-Feldman*.

In *Tyler*, Hennepin County seized and sold Tyler's home to satisfy a tax debt, retaining the full sale price. 598 U.S. at 634-35. The Supreme Court held that the retention of the excess equity constituted a "classic" taking requiring just compensation under the Fifth Amendment. *Id.* at 639. Thus, the county owed Tyler compensation for the sale price of her house, less the tax debt and collection costs. *See id*. at 638-39.

---

[5] Arizona's Takings Clause is not necessarily coextensive with the related provision in the Fifth Amendment. *See Bonito Partners, LLC v. City of Flagstaff*, 270 P.3d 902, 906 n.1 (Ariz. Ct. App. 2012). However, because neither party suggests that distinct interpretation of the Arizona Takings Clause would lead to a different result under *Rooker-Feldman*, we leave that analysis, if necessary, to the district court.

Under *Tyler*, a property owner has a right to compensation for the excess equity in a property even after her other rights and interests in the property are extinguished by the foreclosure judgment. *See id*. at 639-40 (recognizing the common law rule that if a tax collector seizes a taxpayer's property, he is "bound by an implied contract in law . . . to render back the overplus" of the property when sold (quoting 2 William Blackstone, Commentaries on the Laws of England 453 (1771))). *Tyler* therefore recognized a right that survives a tax foreclosure sale and a valid foreclosure judgment. *See id*. at 639, 644 (explaining that Tyler had a right to the surplus equity in her home "once absolute title has transferred to the State"). As Searle argues, she "would have no Takings claim if she undermined the state foreclosure judgment," but "is entitled to just compensation precisely because that judgment will stay in place."

In fact, *Tyler* expressly rejected the argument that "[w]here state law recognizes no property interest in surplus proceeds from a tax-foreclosure sale conducted after adequate notice to the owner, there is no unconstitutional taking." *Id*. at 636; *see id*. at 639. The Supreme Court explained that "[s]tate law is one important source" of property rights, but not "the only source." *Id*. at 638. "Otherwise, a State could 'sidestep the Takings Clause by disavowing traditional property interests' in assets it wishes to appropriate." *Id*. (quoting *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 167 (1998)).

Constitutional error in the foreclosure proceeding implicates an error by the state court, which is why any such challenge is barred by *Rooker-Feldman*. But Defendants' alleged retention of the proceeds from the sale of the property (less the tax debt and costs) does not implicate any

state court error and only implicates Defendants' wrongful conduct. Searle's Takings Clause claims based on Defendants' failure to compensate her for the surplus proceeds from the sale are not barred by *Rooker-Feldman*.

**3.**

Similarly, Searle's claims alleging that the retention of surplus proceeds constituted unjust enrichment or an excessive fine are not barred by *Rooker-Feldman*. These allegations are described in Searle's enumerated claims nine, four, and seven, which, like many of her other claims, also contain allegations that are barred by *Rooker-Feldman* for challenging the foreclosure judgment directly.

Under Arizona law, an unjust enrichment requires "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012) (quoting *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011)). Whether Searle's unjust enrichment claim is barred by *Rooker-Feldman* therefore depends on whether she has an interest in the excess equity in the property that survives the state court judgment. Because *Tyler* recognizes such an interest, *Rooker-Feldman* does not bar her unjust enrichment claim. For the same reason, Searle's claims challenging the retention of surplus as an excessive fine under the Eighth Amendment and Arizona's constitutional analogue are also not barred by *Rooker-Feldman*. We express no opinion on the viability of an excessive-fine claim but leave that issue to the district court in the first instance. *See Tyler*, 598 U.S. at 647-48.

**4.**

Defendants each assert that, given their distinct positions, *Rooker-Feldman* bars Searle's claims against them. Arapaho and American Pride ("Private Defendants") argue that "the District Court cannot grant Searle a money judgment against the [Private] Defendants without nullifying the portion of that Judgment which vests title in the Property to Arapaho free from Searle's interest as required by Arizona's tax enforcement statutes." We reject this argument for the same reason discussed above: *Tyler* held that such a state judgment did *not* extinguish all of the plaintiff's property rights. Rather, Searle retained a right to just compensation under the Takings Clause for the excess equity, which Defendants allegedly owe her.[6]

Maricopa County and John Allen ("County Defendants"), meanwhile, argue that they "only took two actions relevant to this lawsuit: (1) selling the tax lien on [Searle's] property for tax years 2015 and 2016 to Arapaho; and (2) delivering the treasurer's deed for [Searle's] property to Arapaho pursuant to the state court judgment." In so doing, however, County Defendants executed an allegedly unconstitutional statutory process that deprived Searle of the excess equity in her home, which is exactly what she challenges. *Rooker-Feldman* does not prevent these claims from proceeding against all Defendants.

---

[6] Private Defendants also argue that private entities cannot be liable for just compensation claims under the Fifth Amendment because they lack sovereign authority. The district court did not decide this issue, which is outside of the scope of the *Rooker-Feldman* inquiry. On remand, the district court may address this issue in the first instance, if necessary.

## C.

Searle's facial challenge to the constitutionality of the Arizona statute allowing the enforcement of tax liens by private parties without providing just compensation, Ariz. Rev. Stat. § 42-18204(B), is not barred by *Rooker-Feldman*. However, it is moot, and we therefore lack jurisdiction under Article III to consider it. *See McDonald v. Lawson*, 94 F.4th 864, 868 (9th Cir. 2024).

*Rooker-Feldman* does not bar facial challenges to the constitutionality of the statutory or regulatory scheme under which the plaintiff lost a state court action. That is because such challenges "do not require review of a judicial decision in a particular case." *Feldman*, 460 U.S. at 487. The Supreme Court emphasized this point in *Skinner v. Switzer* when it explained that "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." 562 U.S. 521, 532 (2011).

While Searle's facial challenge to the statutory scheme is not barred by *Rooker-Feldman*, it is moot because the Arizona legislature has amended the governing statute since she filed her original complaint. *See American Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1151-52 (9th Cir. 2019) (applying mootness doctrine to policy change based on timing of plaintiff's original complaint). A "'repeal, amendment, or expiration of legislation' gives rise to 'a presumption that the action is moot, unless there is a reasonable expectation that the legislative body is likely to enact the same or substantially similar legislation in the future.'" *McDonald*, 94 F.4th at 868 (quoting *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1197 (9th Cir. 2019) (en banc));

*see also Teter v. Lopez*, 125 F.4th 1301, 1306-07 (9th Cir. 2025) (en banc). "A reasonable expectation of the same or similar legislation being re-adopted 'must be founded in the record.'" *McDonald*, 94 F.4th at 869 (quoting *Glazing Health*, 941 F.3d at 1199).

The Arizona legislature amended Ariz. Rev. Stat. § 42-18204 to conform to the Supreme Court's decision in *Tyler*. To that end, the legislature passed Senate Bill 1431, which created a statutory procedure requiring private lien purchasers to return excess proceeds to the foreclosed property owner upon request. *See* Ariz. Rev. Stat. § 42-18204 (2024). As Searle's SAC notes, following *Tyler*, Arizona officials, including the Attorney General, have acknowledged the unconstitutional deficiencies in the old scheme. The record does not show a reasonable expectation that the old law will be re-adopted. To the contrary, the facts alleged in the complaint strongly suggest that the new law is not likely to be repealed or amended in such a way that it would conflict with *Tyler*. Searle has failed to rebut the presumption that her facial challenge is moot.

## IV.

The *Rooker-Feldman* doctrine is distinct from preclusion claims arising from separate but related lawsuits. *See Miroth*, 136 F.4th at 1154; *see generally Noel*, 341 F.3d at 1164. Searle's claims may be precluded by a recent adverse state court judgment in a related proceeding.[7] But the preclusive effect of such a judgment was not before the district court and was not addressed by the parties in their appellate briefs.

---

[7] Private Defendants' motion to supplement the record, Dkt. 48, is denied.

We therefore leave it to the district court to decide that issue in the first instance, as necessary.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

The parties shall bear their own costs on appeal.